# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60247

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2020

Lyle W. Cayce
Clerk

PENNY NICHOLS CORN; TWYLA JENNINGS,

      Plaintiffs - Appellants

v.

MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY; ALBERT SANTA CRUZ, Individually and in his official capacity as former Commissioner of the Mississippi Department of Public Safety; MARSHALL FISHER, In his official capacity as Commissioner of the Mississippi Department of Public Safety,

      Defendants - Appellees

Appeal from the United States District Court
Southern District of Mississippi

Before DAVIS, SMITH, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This is a First Amendment retaliation action stemming from the termination of two state employees for allegedly reporting an internal investigation into patrol officers' issuing non-existent traffic violations. Plaintiffs Penny Nichols Corn (Corn) and Twyla Jennings (Jennings) (jointly, Plaintiffs) appeal the district court's order granting several motions for judgment on the pleadings brought forth by Mississippi Department of Public Safety (MDPS), Marshall Fisher (Fisher), and Albert Santa Cruz (Cruz) (collectively, Defendants).

No. 19-60247

Because sovereign immunity bars Plaintiffs' claims and their complaint fails to state a claim for First Amendment retaliation, we AFFIRM.

I.

Given that this appeal involves a Federal Rule of Civil Procedure (Rule) 12(c) ruling, we are cabined to the operative pleading—here, the First Amended Complaint—and must accept the allegations therein as true.[1]

### MDPS and the National Highway Traffic Safety Administration

Plaintiffs were employees with MDPS's Division of the Mississippi Office of Highway Safety. Corn initially served as an Office Director, but thereafter, Mississippi's then-Governor Phil Bryant named her as "the Governor's representative of the Mississippi Office of Highway Safety." Jennings was a Division Director. At all relevant times, Jennings acted as Corn's assistant, and "the two collaborated in evaluating" state troopers' "false claims and how to report the false claims to" the National Highway Traffic Safety Administration (NHTSA). This is the extent of Plaintiffs' allegations with regard to their duties and functions as Office Director, Governor Representative, and Division Director (respectively).

According to Plaintiffs, MDPS and Mississippi Highway Patrol received "two grants from the [NHTSA]" in furtherance of (1) enforcing laws prohibiting driving while under the influence; (2) reducing impaired driving fatalities; and (3) financing overtime pay for state troopers writing citations to impaired drivers.

### "Ghost Tickets"

In Paragraph 10 of the operative complaint, Plaintiffs allege that they learned from a highway patrolman that the Office of the Mississippi Highway

---

[1] "In ruling [on a Rule 12(c) dismissal], the district court is confined to the pleadings and must accept all allegations contained therein as true." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

No. 19-60247

Patrol was conducting an Internal Affairs investigation into whether state troopers were writing "ghost tickets"[2] in order to receive overtime pay under the NHTSA grants.

On October 3, 2016[3], Corn voiced her concerns to MDPS officials, Colonel Kevin Meyers and Deputy Administrator Ken Magee, regarding the investigation of the "ghost tickets."

Paragraphs 12 and 15 are inconsistent. Paragraph 12 states that on October 5, Corn first "reported by email and telephone conversation" to an NHTSA employee, Brian Jones, concerning internal affairs' "ghost ticket" inquiry.

In Paragraph 15, Plaintiffs allege that on October 4, Corn received a call from then-Commissioner Cruz and other MDPS officials including Kevin Meyers and Ken Magee. During the call, she explained how she learned of the internal investigation and notified "NHTSA of the investigation." After the call, Corn transcribed the conversation to an email sent to the Governor's office.

To reconcile, we assume that Corn contacted MDPS officials first on October 4 before contacting NHTSA on October 5.

On October 6, Corn sent a follow-up email to Brian Jones regarding the investigation, and she also copied the MDPS officials (whom she previously conversed with).

As a direct and proximate cause of Corn's reporting, NHTSA allegedly ceased all grant funding which prompted the notification of the Governor.

---

[2] Ghost tickets are falsified tickets issued to drivers who are deceased or nonexistent.

[3] Unless stated otherwise, the events within this subsection occurred in 2016.

No. 19-60247

Corn continued to discuss the investigation with Jennings, and both of them allegedly stayed "in contact with the NHTSA officials and remain subject to a subpoena to testify concerning these matters."

In mid-October, Cruz terminated Corn, and the following month, he also terminated Jennings. While Plaintiffs were not given an explanation for the termination, they allege that their termination was "a direct and proximate result of their meeting, planning, and notifying NHTSA of the falsely claimed overtime made pursuant to the ghost tickets."

## II.

In October 2017, Plaintiffs initiated this action against Defendants. Plaintiffs alleged that Defendants violated their First Amendment rights via retaliation, by and through 42 U.S.C. § 1983. They also asserted a claim under the Mississippi Tort Claims Act (MTCA) for wrongful discharge. Their prayer of relief included the following: (1) monetary and injunctive relief against MDPS; (2) declaratory and injunctive relief against Fisher in his official capacity as the MDPS Commissioner; and (3) declaratory relief against Cruz's official and individual capacities and monetary relief against Cruz's individual capacity. The injunction against MDPS and Fisher is to immediately reinstate Plaintiffs to their former positions and include all seniority and past benefits.

Defendants moved for judgment on the pleadings for failing to state a First Amendment retaliation claim, Eleventh Amendment protection, and qualified immunity. The district court granted the motions and entered judgment in Defendants' favor. Plaintiffs are appealing the court's order and judgment.

No. 19-60247

III.

Our Eleventh Amendment and Federal Rule of Civil Procedure 12(c) discussion is under de novo review. *See AT&T Commc'ns v. BellSouth Telecomm. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001) ("Whether a state is entitled to Eleventh Amendment immunity is a question of law that this court reviews de novo."); *see also United States v. 0.073 acres of land, more or less, situate in Pars. of Orleans & Jefferson*, 705 F.3d 540, 543 (5th Cir. 2013) ("We review de novo a grant of judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

A.

Sovereign Immunity

Pursuant to the Eleventh Amendment, a state's sovereign immunity in federal court extends to private suits against state agencies, state departments, and other arms of the state. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997) (stating that sovereign immunity protects "arms of the state").

Plaintiffs are suing MDPS; Fisher in his official capacity; and Cruz in his individual and official capacity as the former MDPS Commissioner. Defendants receive arm-of-the-state recognition as they are under the control and direction of the State of Mississippi. *See Whitfield v. City of Ridgeland*, 876 F. Supp. 2d 779, 783–84 (S.D. Miss. 2012) (finding that MDPS and MDPS Commissioner entitled to Eleventh Amendment immunity); *see also King v. Miss. Highway Patrol*, 827 F. Supp. 402, 403–04 (S.D. Miss. 1993) (holding that the MDPS Commissioner is under control and supervision of the governor). In other words, Plaintiffs' claims are directly against a sovereign. *Cf. Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 941 (5th Cir. 1999) (stating that

5

an action "against a government agent in his official capacity, however, is nothing more than a suit directly against the sovereign").

Given that Plaintiffs' section 1983 and MTCA claims are against a sovereign, the Eleventh Amendment immunizes Defendants, unless one of the following exceptions to immunity applies:

The Eleventh Amendment bars federal "suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015) (internal quotations and citation omitted); *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280–81 (5th Cir. 2002) ("When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity."). The third exception to overcome Eleventh Amendment immunity is the *Ex parte Young* exception—which requires that there be a request for prospective relief against state officials who are committing an ongoing federal violation. 209 U.S. 123 (1908); *Verizon Maryland Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (stating that the *Ex Parte Young* exception must be an ongoing violation of federal law and the complaint must seek equitable relief properly characterized as prospective).

MTCA. Beginning with Plaintiffs' state claim against MDPS for injunctive and monetary relief, the State of Mississippi explicitly preserved its sovereign immunity as to federal litigation when it promulgated MTCA. *See McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 856 (5th Cir. 2009) (per curiam) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts . . . .") (quoting MISS. CODE. ANN. § 11–46–5(4)); *accord Sherwinski v. Peterson*, 98 F.3d 849, 851–52 (5th Cir. 1996) (recognizing that "[a] state does not waive Eleventh Amendment

immunity in federal courts merely by waiving sovereign immunity in its own courts"). Moreover, as it relates to Plaintiffs' request for injunctive relief for this alleged state violation, their MTCA claim is still precluded under fundamental sovereign immunity principles. *Cf. Clay v. Tex. Women's Univ.*, 728 F.2d 714, 716 (5th Cir. 1984) ("[T]he Supreme Court has held that states and state agencies are . . . immune as entities from suits for prospective injunctive relief.") (citation omitted). Plaintiffs' state claim—insofar as it seeks damages and an injunction against MDPS—is therefore barred under sovereign immunity and was properly dismissed by the district court. *Id.*; *see also Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 609 n.10 (2001) (noting that "[s]tates . . . are immune from suits for damages in federal court").

As it relates to MDPS Commissioner defendants (Fisher and Cruz[4]) sued in their official capacities, Plaintiffs' state claim is grounded in declaratory and injunctive relief. However, state officials cannot be sued for violations of state law in federal court, even under the *Ex Parte Young* exception. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (We cannot "instruct[] state officials on how to conform their conduct to state law."). Thus, Fisher and Cruz in their official capacities are immune from Plaintiffs' MTCA claim.

Plaintiffs also cannot hold Cruz "personally liable for acts or omissions occurring within the course and scope of [Cruz's] duties." MISS. CODE ANN. § 11-46-7(2); *Lefoldt ex rel. Natchez Reg'l Med. Ctr. Liquidation Tr. v. Rentfro*,

---

[4] With regard to his official capacity, Cruz has since retired from this position, and Commissioner Fisher currently holds this MDPS post. "[W]hen officials sued in their official capacities leave office, their successors automatically assume their role in the litigation." *Lewis v. Clarke*, 137 S. Ct. 1285, 1292 (2017). In turn, all federal and state claims against Cruz in his official capacity have been assumed by Fisher. *Id.*

853 F.3d 750, 752 (5th Cir. 2017) ("The MTCA protects employees of a governmental entity from being held personally liable for acts or omissions that occur within the course and scope of their employment."), *certified question answered*, 241 So. 3d 565 (Miss. 2017). There are no allegations that Cruz acted outside of his Commissioner duties during the relevant time period. Consequently, this state claim against Cruz in his individual capacity was correctly dismissed.

First Amendment Retaliation Claim. Sovereign immunity prohibits Plaintiffs from seeking injunctive relief against MDPS under their retaliation claim. MDPS has not specifically waived its immunity from suit in federal court, and "Congress has not expressly waived sovereign immunity for § 1983 suits." *Richardson*, 118 F.3d at 453; *see id.* ("[I]t is well established that only upon a showing that Congress expressly intended to abrogate sovereign immunity may we bypass the sovereign immunity inquiry in suits against States or their agencies."). And as mentioned above, despite Plaintiffs' prayer requesting an injunction, MDPS is nonetheless protected under the Eleventh Amendment. *Cf. Clay*, 728 F.2d at 716; *Cozzo*, 279 F.3d at 280–81. The district court's dismissal of this federal claim—insofar that it seeks an injunction against MDPS—was appropriate and therefore is affirmed.

Next, we look to Plaintiffs' prayer for declaratory relief against Fisher and Cruz in their official capacities. Neither individual defendant has waived his immunity as an MDPS Commissioner, leaving the *Ex Parte Young* exception. "To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). However, the Supreme Court limits the *Ex Parte Young* exception to "cases in which a

violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Papasan v. Allain*, 478 U.S. 265, 277−78 (1986).   In other words, Plaintiffs must show "that [Fisher is currently] *violating* federal law, not simply that the defendant has done so*." NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (emphasis in original).

Here, Plaintiffs seek a declaratory judgment that Fisher and Cruz violated the First Amendment.   This prayer for relief is fundamentally retrospective because it does not relate to an ongoing violation of their federal rights; instead, it pertains to Plaintiffs' 2016 termination.   The *Ex parte Young* doctrine does not permit "a declaratory judgment that respondent violated federal law in the past" as we have here.   *Green v. Mansour*, 474 U.S. 64, 74 (1985) (Brennan, J., dissenting).   Thus, MDPS Commissioner defendants remain immune to Plaintiffs' First Amendment claim.

What remains under this federal claim is Plaintiffs' (1) injunctive relief request against Fisher in his official capacity and Cruz as an individual; and (2) monetary relief against Cruz in his individual capacity.

Plaintiffs are seeking to be reinstated to their former positions.   In *Warnock v. Pecos Cty.*, we stated that the *Ex parte Young* doctrine was an appropriate vehicle for pursuing reinstatement to a previous job position—as the case here.   *See* 88 F.3d 341, 343 (5th Cir. 1996).   The district court therefore correctly ruled that Plaintiffs' injunctive prayer is not subject to the Eleventh Amendment's jurisdictional bar.   As to the monetary relief against Cruz individually, "sovereign immunity does not erect a barrier against suits to impose individual and personal liability*." Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017) (internal quotation marks omitted).   In turn, what is in our jurisdictional purview is Plaintiffs' prayer for injunctive relief as it relates to

No. 19-60247

their retaliation claim against Fisher and Cruz and the monetary damages as it pertains to Cruz.

B.

Failure to State a Claim for First Amendment Retaliation

Now reviewing the merits of this First Amendment action, we determine whether Plaintiffs are entitled to First Amendment protection. The district court determined that Plaintiffs failed to plead a plausible claim because Plaintiffs' statements were not protected as the alleged speech was not outside of their ordinary job duties. Plaintiffs maintain that their communications were made as citizens, rather than employees—thus, outside of their job duties and warranting First Amendment protection. We agree with the district court.

One inquiry guides our First Amendment analysis here: whether the employee spoke as a citizen on a matter of public concern or pursuant to his or her official duties.[5] *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ."). We've stated that a public employee's speech is made pursuant to his or her official duties when it is "'made in the course of performing his employment.'" *Anderson v. Valdez*, 845 F.3d 580, 595 (5th Cir. 2016) (quoting *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)). We examine whether Plaintiffs were subject to the employer's control or whether the Plaintiffs' course of conduct was "intended . . . to serve any purpose of the employer." *Id.* at 596 (internal quotation and citation omitted). Evaluation of

---

[5] To demonstrate a prima facie case for First Amendment retaliation, a "plaintiff must establish that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016). Our discussion only pertains to the second prong as it is dispositive.

this prong of the retaliation analysis is a question of law.  *See Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015).

Plaintiffs were not speaking as citizens when they allegedly reported "ghost ticketing" to NHTSA and the MDPS officials.  In Corn's capacity as Office Director and the "Governor's representative" and Jennings' capacity as Division Director, their amended complaint specifically alleges that "the two collaborated in evaluating" state troopers' "false claims and how to report the false claims to" NHTSA.  Said differently, "in the course of performing [their] employment," Plaintiffs reported to NHTSA in the context of falsified claims. *Anderson*, 845 F.3d at 595.  Both in their briefs and at oral argument, Plaintiffs fail to point us to any allegation that provides an understanding of their job responsibilities, beyond the aforementioned allegation.[6]  As such, taking this allegation as true, it appears that Plaintiffs' job duties are closely related to the function of reporting falsified claims, similar to the "ghost ticketing" investigation.  *Cf. Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008) (noting that speech may still not be protected if it is "closely related" to the plaintiff's job duties) (citing *Williams*, 480 F.3d at 693).  There is no meaningful distinction between Plaintiffs' and NHTSA's communicating about the "ghost ticket" investigation versus their ordinary communications with regard to falsified claims involving state troopers.  Arguably, by virtue of their employment only, Plaintiffs learned of the investigation into the state trooper misconduct known as "ghost ticketing," *i.e.* the speech may have resulted from

---

[6] While Plaintiffs do point to various examples within the record (e.g. Plaintiffs' affidavits in support of their opposition briefs), the facts therein are nowhere mentioned in the operative pleading.  We cannot go beyond the pleadings in a Rule 12(c) analysis and use this sworn testimony as a determination of whether Plaintiffs' reporting was outside of the public employee's ordinary job responsibilities.  *See, supra*, n.1 (citing *Hughes*, 278 F.3d at 420).

Plaintiffs' special knowledge gained as MDPS employees.[7]  Given the close relation between the allegations of Plaintiffs' job duties in evaluating false claims of state troopers and "ghost ticket" reporting, we conclude that Plaintiffs' alleged speech fell within the scope of their duties and that they have failed to plead otherwise.

Moreover, not only is Plaintiffs' "ghost ticket" reporting related to their job functions, the alleged speech is also a continuation of their up-the-chain speech made to their employer, MDPS.  According to the complaint, Corn reported the "ghost ticketing" investigation to MDPS officials on two separate occasions (October 3 and 4) and also sent an email to the Governor's office. These are internal reporting examples of making a complaint up the chain of command because (1) Plaintiffs held MDPS director positions that were subordinate to the MDPS Commissioner at the time, Cruz, and the MDPS officials and (2) Corn held a representative position in which she answered to the Governor.  *Cf. Davis*, 518 F.3d at 315−16 (state university employee's job-related communications up the chain fell within her official duties*); Umoren v. Plano Indep. Sch. Dist.*, 457 F. App'x 422, 426 (5th Cir. 2012) (per curiam) (same as to substitute teacher's job-related complaints to officials up the chain of command).  The subsequent October 5 speech to NHTSA—the alleged external source—similarly follows the "ghost ticket" investigation and therefore is simply a continuation of unprotected speech.  *Anderson v. Valdez*, 913 F.3d 472, 478, 478 n.24 (5th Cir. 2019) (stating that the plaintiff "cannot escape the discipline of his employer for breach of his employee duties by going public with the same speech" because the external public statements are a "continuation" of the statements made earlier as an employee) (citing *Nixon v.*

---

[7] One can draw this conclusion because in Paragraph 10, Plaintiffs specifically allege that they learned of the "ghost ticketing" investigation from a highway patrolman, presumably during the course of their employment.

*City of Hous.*, 511 F.3d 494, 497 (5th Cir. 2007)).  Because Plaintiffs' alleged speech first occurred up the MDPS and Governor hierarchy in Corn's employee capacity, the similar external speech that trails is also unprotected as it tracks internal complaints.  *Id.*; *cf. Davis*, 518 F.3d at 313 ("[W]hen a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job.").  We therefore conclude that Plaintiffs failed to demonstrate that their alleged speech was protected under the First Amendment.

Given this holding, it necessarily follows that the district court correctly dismissed Plaintiffs' section 1983 claim for retaliation in violation of his First Amendment rights, for their failure to allege sufficient facts that they spoke as a citizen on a matter of public concern.  Accordingly, we affirm the district court's Rule 12(c) dismissal of this claim as it pertains to Fisher in his official capacity and Cruz in his individual capacity.

## IV.

For the reasons set forth above, we AFFIRM the district court's dismissal of Plaintiffs' claims against Defendants as this suit is barred under the Eleventh Amendment and Plaintiffs have otherwise failed to state a claim.