# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 17, 2021

Lyle W. Cayce
Clerk

No. 20-10901

Robert A. Hawkland,

*Plaintiff—Appellee*,

*versus*

Burke Hall, *individually and in his capacity as* President of Board of Trustees of the Grand Prairie Independent School District; Vicki Bridges, *individually and as* Assistant Superintendent of the Grand Prairie Independent School District; Phil Jimerson, *individually and in his capacity as* Interim Assistant Superintendent of Operations of the Grand Prairie Independent School District,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-1822

Before Higginbotham, Stewart, and Wilson, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

Robert Hawkland brought 42 U.S.C. § 1983 claims against his former employer, the Grand Prairie Independent School District (the "District"), for employment retaliation in violation of the First Amendment. Suing the District, two administrators, and a member of the Board, Hawkland alleged he was improperly terminated because of statements he made during an internal investigation into the District's finances. Defendants filed motions to dismiss for failure to state a claim, asserting that Hawkland spoke as an employee, such that his statements were not protected speech. Alternatively, defendants asserted that qualified immunity barred his claims against them. The district court denied defendants' motions. Concluding that Hawkland's speech was made pursuant to his official duties, we REVERSE the court's denial of defendants' motions to dismiss and REMAND for entry of judgment in favor of defendants.

## I.

In 2017, District Superintendent Susan Hull faced public criticism for residing in a home purchased and renovated with District funds. Responding to rumors of financial impropriety, the District's Board of Trustees hired an outside law firm to investigate the District's management and accounting policies—including the purchase and renovation of Hull's home. In May 2018, the firm concluded its investigation. Though it publicly released only a portion of its final report, the firm did not find any actionable misconduct.

Hawkland was an employee of the District for approximately two decades. In the last five years of his tenure, he was a manager of the District's HVAC system. As part of the internal investigation, Hawkland and other District employees were interviewed by the investigating law firm. According to the complaint, the Superintendent's office required Hawkland's participation, and the firm assured him there would be no retaliation for truthful statements. The firm and a member of the District's

No. 20-10901

Board asked Hawkland questions, and his answers negatively reflected on Hull and her use of District resources.

After the investigation concluded, Hawkland's responses were conveyed to Hull and Burke Hall, the current President of the Board.[1] Hawkland was thus revealed as a source of information about the District's purported mismanagement of funds. Thereafter, he was excluded from ordinary meetings, his department's budget was reduced, and Vicki Bridges—then Assistant Superintendent of Operations—instructed him to refrain from speaking on school district practices. Phil Jimerson, former Interim Assistant Superintendent of Operations, also inquired into Hawkland's management of the HVAC system, which Hawkland alleges was a front to find justification for terminating his employment. About a year after the investigation concluded, Hull fired Hawkland in June 2019 after he refused to resign. No criticisms of his performance or behavior, nor disciplinary procedures, were mentioned.

Hawkland filed his complaint in July 2019 and an amended complaint in October 2019 (the operative complaint for this appeal). He asserts multiple § 1983 claims. First, he alleges the District is liable for First Amendment employment retaliation. He maintains the District followed an informal policy or custom of preventing its employees from "disclosing or discussing any matter that might cast the District or Superintendent Hull in a negative light" and "retaliate[ed] against those who did by taking or threatening to take adverse employment action." Second, and on the same

---

[1] The amended complaint does not specify if Hall was President or Vice President of the Board when he learned of Hawkland's statements.

No. 20-10901

alleged facts, he brings First Amendment retaliation claims against Hall, Bridges, and Jimerson in their individual capacities.[2]

The individual defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting Hawkland failed to a state a claim for First Amendment retaliation and interposing the defense of qualified immunity.   In August 2020, the district court denied their motions. Defendants then filed this interlocutory appeal.

## II.

The denial of a motion to dismiss predicated on qualified immunity is an "immediately appealable [collateral] order." *Zapata v. Melson*, 750 F.3d 481, 484 (5th Cir. 2014); *see Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 193–94 (5th Cir. 2009).   We have pendant appellate jurisdiction when an appealable order is "inextricably intertwined" with an unappealable order. *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 453–54 (5th Cir. 1998).   Here, the district court's one-page order denying the defendants' motions to dismiss made no express mention of qualified immunity, but the court's ruling impliedly rejected the defendants' alternative defense. When a district court denies a motion to dismiss that includes the defense of qualified immunity, and thereby holds the plaintiff properly stated a claim for First Amendment retaliation, we exercise jurisdiction over both issues. *Anderson v. Valdez*, 845 F.3d 580, 588–89 (5th Cir. 2016).

---

[2] The amended complaint asserts Hall, Bridges, and Jimerson were "acting individually . . . as well as in their official positions with the School District" in terminating Hawkland; the defendants' brief states these three were sued in their "individual and official capacities."   Any claims against Hall, Bridges, and Jimerson in their official capacities are duplicative of the claim against the District itself. *See Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 417 (5th Cir. 2018) ("[S]uits against officials in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).

4

No. 20-10901

Hawkland contests our jurisdiction to consider whether he adequately pled a retaliation claim. He maintains that the contextual aspects of his speech (i.e., whether the statements were "within the scope of his job") are disputes of fact. But this mistakes the nature of our review. When a denial of qualified immunity is appealed, "we are restricted to determinations of questions of law and legal issues, and we do not consider the correctness of the plaintiff's version of the facts." *Club Retro*, 568 F.3d at 194 (citation omitted). While we thus accept all of Hawkland's well-pled factual allegations as true and draw all reasonable inferences in his favor, determining whether he spoke as an employee or as a citizen is a reviewable question of law. *See, e.g.*, *Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015).

We consider de novo the sufficiency of both Hawkland's First Amendment retaliation claim and defendants' assertion of qualified immunity. *Anderson*, 845 F.3d at 589. With respect to the former, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2); *see Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) ("Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims . . . ."). In other words, Hawkland's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Facial plausibility requires he plead "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Id.*

No. 20-10901

## III.

We first address whether Hawkland sufficiently alleged a § 1983 claim against Hall, Bridges, and Jimerson for First Amendment employment retaliation. If he failed to do so, we need not further address the defendants' invocation of qualified immunity. After all, to overcome a qualified immunity defense, a plaintiff must plead facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks and citation omitted). Some opinions, as well as defendants' brief, discuss First Amendment retaliation claims under prong one of the qualified immunity analysis. *See, e.g.*, *Rayborn*, 881 F.3d at 417–18. For analytic clarity, we separate the two issues, even if the analysis leads substantively to the same end. *See Anderson*, 845 F.3d at 590 (assessing the elements of a § 1983 claim for employment retaliation before discussing qualified immunity); *Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016) (same).

## A.

"To succeed in a First Amendment retaliation claim under § 1983, a public employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (internal quotation marks and citation omitted). Defendants contest only the second element, contending Hawkland spoke as an employee—not as a citizen—during the District's internal investigation.

The second element of the First Amendment retaliation analysis encompasses two requirements: an employee must have spoken as a citizen

No. 20-10901

*and* that speech must have been on a matter of public concern. The first requirement is a threshold inquiry into whether an employee was speaking as a citizen or "pursuant to [the employee's] official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *see Hurst v. Lee County.*, 764 F.3d 480, 484 (5th Cir. 2014). If an employee's speech was made pursuant to his official duties, he is not entitled to First Amendment protection even if he spoke on a matter of public concern. *Anderson*, 845 F.3d at 592; *see Howell*, 827 at 522–23 ("[I]nstead of asking only if the speech at issue was on a matter of public concern, a court must first decide whether the plaintiff was speaking as a citizen disassociated with his public duties."). Again, defendants do not dispute Hawkland's speech pertained to a matter of public concern; they only challenge whether he spoke as a citizen or employee. So we turn to that analysis.

In determining whether an employee spoke pursuant to his official duties, the Supreme Court has emphasized the critical question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks,* 573 U.S. 228, 240 (2014). In *Lane*, a college administrator testified to a grand jury, under subpoena, about a financial fraud investigation at his university. *Id.* at 232–33. He was fired thereafter, and he brought a § 1983 employment retaliation claim. *Id.* at 234. Holding Lane's grand jury testimony was protected under the First Amendment, the Supreme Court reasoned "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Id.* at 240. Rather, Lane's speech was made as a citizen because it fell outside his "ordinary job duties" and originated in an obligation "to the court and society at large . . . to tell the truth." *Id.* at 238.

No. 20-10901

Regarding *Lane*, we have cautioned against a strict interpretation of the term "ordinary job duties," insisting the question of whether an employee's speech was pursuant to his official duties remains "a practical inquiry." *Culbertson v. Lykos*, 790 F.3d 608, 620 (5th Cir. 2015); *Anderson*, 845 F.3d at 596; *see Gibson v. Kilpatrick*, 773 F.3d 661, 667–68 (5th Cir. 2014) (noting *Lane* presented "no occasion for the Court to refine the standard for determining when an employee speaks pursuant to his official duties"). To that end, we consider a number of factors to determine whether an employee's speech was made pursuant to, and was ordinarily within, his official duties.

First, while an employee's job description is relevant, it is not dispositive; we look to it insofar as it is "instructive" in the analysis. *Gibson*, 773 F.3d at 671. More importantly, if the employer directed the employee's speech, and the employer was entitled to exercise such control, then it was likely made pursuant to the employee's official duties. *Anderson*, 845 F.3d at 596. We similarly look to whether the speech, even if outside the employer's control, was still "intended to serve any purpose of the employer." *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 277 (5th Cir. 2020) (citation omitted); *see Garcetti*, 547 U.S. at 421–22 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.").

While our focus is on the role of the speaker and not the content of the speech, we will also consider the content if it relates to the employee's official duties. *See Davis v. McKinney*, 518 F.3d 304, 314 (5th Cir. 2008) (comparing different sections of employee's internal complaint letter to her official position and noting "some of [the letter] clearly relates to [her] job as an internal auditor, other parts do not"). Broader contextual factors include whether the employee's speech was made up the internal chain of command or to an outside actor (such as the media), if the employee spoke to others at

his workplace or kept the information confidential, and whether there is an analogue to speech by citizens—that is, whether the speech was of the kind "engaged in by citizens who do not work for the government." *Paske v. Fitzgerald*, 785 F.3d 977, 984 (5th Cir. 2015) (citation omitted); *see Gibson*, 773 F.3d at 670 (considering chain of command); *Howell*, 827 F.3d at 524 ("[T]he confidential nature of [plaintiff's] speech alone suggests that it was not part of his 'ordinary' professional duties.").

Defendants largely rest their appeal on two cases that they contend dictate any statements made by an employee during an internal investigation were made pursuant to the employee's official duties. *See Rodriguez v. City of Corpus Christi*, 687 F. App'x 386 (5th Cir. 2017); *Caleb v. Grier*, 598 F. App'x 227 (5th Cir. 2015). Notwithstanding that these are unpublished opinions, and thus not precedential, we also disagree they stand for such a categorical proposition. That said, both opinions do concern internal investigations. In *Caleb*, we observed that "assisting in an employer's investigation into workplace theft is ordinarily within the scope of an employee's job duties." 598 F. App'x at 236. We applied the same reasoning in *Rodriguez*, which involved an investigation into a workplace confrontation. 687 F. App'x at 390.

In both cases, however, we recognized *multiple factors* showing the plaintiffs acted as employees and not as citizens. Each considered, *inter alia*, that the employer directed the plaintiff to participate in the investigation and the plaintiff limited his or her speech to the chain of command. *Caleb*, 598 F. App'x at 236; *Rodriguez*, 687 F. App'x at 390. Indeed, to hold that an employee spoke pursuant to official duties *solely* by virtue of his involvement in an employer's internal investigation would unduly treat a single factor as dispositive. *See Tregre*, 787 F.3d at 325 (considering multiple factors in holding plaintiff acted in his official duties as police Chief Deputy when he was interviewed as part of an internal investigation).

No. 20-10901

**B.**

Applying this discussion to Hawkland's complaint, we conclude Hawkland's statements during the District's internal investigation were made pursuant to his official duties. Granted the subject-matter of the investigation was perhaps only tangentially related to Hawkland's work as a manager of the HVAC system, he still participated upon the directive of his employer and his speech unequivocally served his employer's purpose. *See Anderson*, 845 F.3d at 596; *Corn*, 954 F.3d at 277. Hawkland states he was "forced to cooperate," but he does not challenge the Superintendent's authority to require his participation. *Cf. Lane,* 573 U.S. at 239 ("[O]bligations as an employee are distinct and independent from the obligation, as a citizen, to speak the truth. That independent obligation renders sworn testimony speech as a citizen and sets it apart from speech made purely in the capacity of an employee.").

Moreover, Hawkland never expressed his criticisms of Hull to anyone outside his employment, let alone outside those with whom he spoke during the investigation. He did not, for instance, attempt to publicize his complaints, share his opinion publicly, or otherwise discuss the matter with news media or the greater public. *See Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 694 n.2 (5th Cir. 2007) ("This is not a case where [plaintiff] wrote to the local newspaper or school board with his athletic funding concerns."); *cf. Graziosi*, 775 F.3d at 737 (holding police officer's posts on Facebook, while off duty and from her home computer, was speech made as a citizen). Indeed, in the context of Hawkland's participation in an employer-initiated internal investigation, it is difficult to imagine a citizen's comparable speech-related activity. *See Garcetti*, 547 U.S. at 422 ("Contrast, for example, the expressions made by [an employee] whose letter to the newspaper had no official significance and bore similarities to letters submitted by numerous citizens every day.").

No. 20-10901

In sum, far and away from an independent obligation to our legal system or society at large, Hawkland's speech was made in the limited context of the District's internal investigation. It originated from his employer's request for his cooperation, and it lacked an analogue to speech normally made by citizens. For these reasons, the district court erred in holding Hawkland adequately pleaded a First Amendment retaliation claim. It follows that we need not further address the defendants' assertion of qualified immunity.

* * *

Accordingly, we REVERSE the district court's denial of defendants' Rule 12(b)(6) motions to dismiss Hawkland's § 1983 claims against them. We REMAND for entry of judgment in favor of Hall, Bridges, and Jimerson in their individual capacities.