**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1575

UNITED STATES EX REL. CITYNET, LLC,

Plaintiff - Appellee,

v.

JIMMY GIANATO, individually; GALE GIVEN, individually,

Defendants - Appellants,

and

FRONTIER WEST VIRGINIA, INC., a West Virginia corporation; KENNETH ARNDT, individually; DANA WALDO, individually; MARK MCKENZIE, individually, KELLY GOES, individually,

Defendants.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., Senior District Judge. (2:14-cv-15947)

Argued: January 29, 2020                           Decided: June 22, 2020

Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.

Vacated and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Motz joined.

**ARGUED:** Geoffrey A. Cullop, PULLIN, FOWLER, FLANAGAN BROWN & POE, PLLC, Charleston, West Virginia, for Appellants. Benjamin L. Bailey, BAILEY & GLASSER LLP, Charleston, West Virginia, for Appellee. **ON BRIEF:** Stephen M. Fowler, PULLIN, FOWLER, FLANAGAN BROWN & POE, PLLC, Charleston, West Virginia, for Appellants. Rebecca L. Donnellan-Pomeroy, BAILEY & GLASSER LLP, Charleston, West Virginia, for Appellee.

NIEMEYER, Circuit Judge:

Acting on behalf of the United States, a West Virginia company, Citynet, LLC, commenced this "qui tam" action against West Virginia officials Jimmy Gianato, Gale Given, and others, alleging in nine counts that the defendants defrauded the United States when obtaining federal funding for a program to improve broadband connectivity for West Virginia residents, in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. Specifically, Citynet alleged that Gianato and Given, respectively the Director of the West Virginia Division of Homeland Security and Emergency Management and the State Technology Officer, along with other defendants, knowingly submitted false statements and records to the United States as part of their application for funding under the federal Broadband Technology Opportunities Program and, once the funding was obtained, made false claims in drawing down funds under the Program.

Gianato and Given filed a motion to dismiss the complaint, asserting, among other things, that it failed to state plausible claims for relief and that they were, in any event, entitled to qualified immunity. The district court ruled that, with the exception of two counts against Given related to her involvement in the preparation of the grant application, the complaint adequately alleged that Gianato and Given had violated the FCA. And with respect to qualified immunity, the court ruled that "the determination of whether [Gianato and Given are] entitled to the defense [of qualified immunity] [had to] be deferred until a later time in light of evidentiary development, such as at the summary judgment stage." It explained that resolving the immunity question required further fact-finding with respect to each official's state of mind in allegedly violating the FCA. In so concluding, the district

3

court implicitly assumed that government officials could invoke qualified immunity as a defense to claims brought under the FCA.

Gianato and Given filed this interlocutory appeal from the district court's ruling on qualified immunity, claiming that, because qualified immunity is an immunity from suit, they ought to be shielded from participating in further proceedings before the district court. Citynet filed a motion to dismiss the appeal, contending that the district court's ruling that further facts were needed before ruling on immunity is not immediately appealable. Citynet also argued that, in any event, persons violating the FCA cannot be protected by immunity because they "knowingly perpetrated a fraud on the United States government."

Because the district court's ruling was contingent on the answer to the threshold legal question of whether qualified immunity may be invoked as a defense to FCA claims, we exercise appellate jurisdiction and hold that qualified immunity does not apply to protect government officials from claims against them for fraud under the Act. Accordingly, we vacate the district court's immunity ruling and remand with the instruction that the district court deny Gianato and Given's claim of qualified immunity.

I

Under the American Recovery and Reinvestment Act of 2009, Congress appropriated approximately $4.7 billion in federal funds for the Broadband Technology Opportunities Program, seeking to create jobs and expand broadband access in rural and underserved communities. On behalf of the Executive Office of the State of West Virginia, Gianato and others submitted an application for funding under the Program with a proposal

for a "middle-mile" project, which would link a telecommunications carrier's core network to local hubs, such as schools, libraries, and healthcare facilities. In February 2010, the Executive Office received a grant of over $126 million in Program funding for that project.

Citynet, a communications service provider that had unsuccessfully applied for Program funding, commenced this action on behalf of the United States under the FCA. It alleged in nine counts that Gianato, Given, and various other defendants not involved in this appeal engaged in a scheme to fraudulently cause the federal government to award Program funds to the Executive Office by knowingly submitting false statements and records as part of the grant application and by subsequently submitting false claims to the federal government for payments under the Program. According to the complaint, the defendants prepared the grant application with the intent that another entity, Frontier West Virginia, Inc., "be the actual recipient of [any] grant funds awarded to the [Executive Office]," and, as a result, the Executive Office's grant proposal contained numerous material misrepresentations. Citynet also alleged that, once the Executive Office had been awarded a grant under the Program, it coordinated with Frontier to submit false invoices to the government while fraudulently using the funds in pursuit of a project entirely different from the one that had been awarded federal funding. Thus, Frontier, through the Executive Office, billed the federal government for "material and labor it did not provide, and for fiber links that were not constructed."

Gianato and Given filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing, *inter alia*, that each count against them failed to state a plausible claim for relief; that, as state officials sued in their individual capacities for

5

conduct undertaken in the course of their official duties, they were not "persons" subject to liability under the FCA; and that, in any event, they were entitled to qualified immunity.

In a 104-page opinion and order dated March 30, 2018, the district court granted the motion to dismiss in part and denied it in part. As relevant to this appeal, the court determined that, with the exception of two counts against Given related to the preparation of the grant application, Citynet had adequately pleaded that both Gianato and Given had violated the FCA. The court deferred ruling on Gianato and Given's assertion of qualified immunity, concluding that, without further facts, it could not determine the level of scienter with which they had acted or, relatedly, whether their actions had violated a clearly established right. Recognizing that the FCA requires a showing that the defendant acted with actual knowledge, deliberate ignorance, or reckless disregard, the court observed that "a reasonable person with 'actual knowledge' of his fraud would doubtlessly know that the fraud he perpetrates is wrong. At the other end, whether a reasonable person 'act[ing] in reckless disregard of the truth' would recognize that his actions constitute a fraud under the FCA is a much closer issue." The court concluded:

> While the complaint sufficiently alleges that the defendants acted with the requisite scienter, the court cannot at this juncture decide the level of scienter with which [Gianato and Given] acted in allegedly violating the FCA. That obfuscates the qualified immunity analysis as set forth above, and the qualified immunity decision consequently must be deferred until a time when the court can make an informed decision based upon the evidence.

Gianato and Given filed this interlocutory appeal from the district court's immunity ruling, asserting that it was a "final decision under the collateral order doctrine."

6

Contending otherwise, Citynet filed a motion to dismiss the appeal, and we deferred ruling on the motion pending briefing on the merits and oral argument.

## II

At the outset, we must address Citynet's motion to dismiss this appeal, as it challenges our jurisdiction.

Citynet contends in its motion that when a district court defers ruling on the claim of qualified immunity because of a need for factual development, a court of appeals lacks jurisdiction to review the district court's order. But in its subsequent brief, Citynet takes a position somewhat in tension with its motion, asserting that an immunity defense is not available in response to a claim that defendants knowingly violated the FCA, thus implying that the issue of immunity can be decided as a matter of law at this stage of the proceeding.

The principles for determining our jurisdiction are well established. Ordinarily, the denial of a motion to dismiss is interlocutory and thus not subject to immediate appeal. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). But, under the collateral order doctrine, appellate jurisdiction extends to "'a narrow class of decisions that do not terminate the litigation,' but are sufficiently important and collateral to the merits that they should 'nonetheless be treated as final.'" *Will v. Hallock*, 546 U.S. 345, 347 (2006) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)).

Under this doctrine, a conclusive order denying a motion to dismiss on qualified immunity grounds constitutes an immediately appealable collateral order if it turns on a pure issue of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671–72 (2009) ("A district-court

7

decision denying a Government officer's claim of qualified immunity can fall within the narrow class of appealable orders despite the absence of a final judgment" if it "turns on an issue of law" (cleaned up)); *see also Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 221 (4th Cir. 2012) (en banc) ("[O]rders denying dismissal motions, insofar as those motions are based on immunities that are not absolute but conditioned on context, . . . are . . . immediately appealable" when based on "abstract issues of law" (cleaned up)). This is so because qualified immunity "is an *immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, we have recognized that a district court's refusal to rule on the immunity question nullifies the benefits of the defense and may thus be treated as an immediately appealable denial of immunity. *See Nero v. Mosby*, 890 F.3d 106, 125 (4th Cir. 2018); *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc). An exception arises, however, when further factual development is needed to rule on the immunity question itself. *See Al Shimari*, 679 F.3d at 220 ("[E]ven a party whose assertion of immunity ultimately proves worthy must submit to the burdens of litigation until a court becomes sufficiently informed to rule").

Citynet bases its motion to dismiss this appeal on this exception. The district court did indeed conclude that factual development was needed to rule on the immunity question. But the court's ruling presumed that the immunity defense was available in response to an FCA claim. In so presuming, the court skipped the logically antecedent legal question of whether qualified immunity could *ever* be invoked as a defense to claims of fraud brought under the FCA. And resolution of *this* question requires no factual development. The

8

district court's deferral ruling in this case thus depends on resolution of this pure issue of law, supporting our exercise of appellate jurisdiction at this time. Accordingly, we deny Citynet's motion to dismiss the appeal.

III

When applicable, the doctrine of "[q]ualified immunity shields federal and state officials from money damages" in cases alleging violations of either "statutory or constitutional right[s]." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). But we have yet to address the more specific question of whether qualified immunity may be invoked as a defense to claims brought under the FCA — the resolution of which turns on whether the FCA's scienter requirement is inconsistent with the doctrine.

Originally passed in 1863 in response to widespread fraud against the government during the American Civil War, "the FCA is a fraud prevention statute" that imposes liability on those who defraud federal government programs. *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728 (4th Cir. 2010) (cleaned up); *see also Rainwater v. United States*, 356 U.S. 590, 592 (1958). In its current version, the FCA provides that suit may be brought against "any person" who, *inter alia*, "knowingly presents, or causes to be presented, [to the United States government] a false or fraudulent claim for payment or approval"; "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or conspires to commit such acts. 31 U.S.C. § 3729(a)(1)(A)–(C). "In adopting the FCA,

9

'the objective of Congress was broadly to protect the funds and property of the government.'" *Owens*, 612 F.3d at 728 (quoting *Rainwater*, 356 U.S. at 592).

The FCA requires explicitly that, to be liable under the Act, the defendant must have acted "knowingly."  And it defines "knowingly" to "mean that a person, with respect to information — (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information."  31 U.S.C. § 3729(b)(1)(A).  We have previously recognized that this element is so defined to ensure that liability is not imposed for "honest mistakes or incorrect claims submitted through mere negligence."  *Owens*, 612 F.3d at 728 (quoting S. Rep. No. 99-345, at 7 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5272).  Thus, FCA liability attaches only where a person has acted *intentionally* or *recklessly*.

Yet, by acting *intentionally* or *recklessly*, a government official necessarily forfeits any entitlement to qualified immunity.  *See al-Kidd*, 563 U.S. at 743 (explaining that qualified immunity protects "all but the plainly incompetent or those who *knowingly* violate the law" (emphasis added) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).  Stated otherwise, qualified immunity does not protect government officials when they act to violate the law with actual knowledge, deliberate ignorance, or reckless disregard of a risk to a constitutional or statutory right.  *See, e.g.*, *Washington v. Wilmore*, 407 F.3d 274, 283–84 (4th Cir. 2005) (reasoning that qualified immunity may not shield government officials who *knowingly* create or use false evidence to obtain a criminal conviction); *Hope v. Pelzer*, 536 U.S. 730, 744–45 (2002) (reasoning that qualified immunity may not shield government officials for a course of conduct where they have *ignored* a regulation with

10

impunity); *Raub v. Campbell*, 785 F.3d 876, 884 n.8 (4th Cir. 2015) (explaining that "[i]n the arrest context, a law enforcement officer's omission of material facts from a warrant affidavit deprives him of qualified immunity . . . if the omission was made intentionally or with a '*reckless disregard* for the truth'" (emphasis added) (quoting *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007))). Thus, the state of mind required to establish liability under the FCA is also sufficient to preclude immunity protection, and therefore immunity cannot protect a public official from a suit alleging a claim under the FCA. In order to have violated the FCA, a government official would have necessarily had to act in a manner inconsistent with the type of "reasonable but mistaken judgments" qualified immunity is designed to shield. *al-Kidd*, 563 U.S. at 743.

Moreover, there is good reason to hesitate before applying qualified immunity — a doctrine that "acts to safeguard the government, and thereby to protect the public at large" rather than to "benefit [the government's] agents" — to situations where the victim of the alleged violation is the United States government itself, and the perpetrator a federal or state agent. *Wyatt v. Cole*, 504 U.S. 158, 168 (1992). While courts have recognized the public interest in affording public officers immunity from suit to protect their ability to exercise independent discretion in carrying out their official duties, *see*, *e.g.*, *Nixon v. Fitzgerald*, 457 U.S. 731, 744–45 (1982), it surely does not serve the public interest to extend immunity protection to public officials who defraud the government. Thus, while immunity should protect discretion, it must not shield fraud.

At bottom, we hold that qualified immunity may not be invoked as a defense to liability under the FCA. *See Samuel v. Holmes*, 138 F.3d 173, 178 (5th Cir. 1998)

11

(reasoning that "qualified immunity seems particularly ill-suited" to FCA retaliation claims under 31 U.S.C. § 3730(h) because "[g]ranting government officials the protection of qualified immunity would hardly spur reluctant employees to step forward" with knowledge of fraud against the government); *United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 685 (S.D. Tex. 2013) (holding that because the FCA attaches liability only if a defendant knowingly presents a false or fraudulent claim, "qualified immunity . . . has little role to play in False Claims Act cases"). Therefore, Gianato and Given cannot claim qualified immunity as a defense to Citynet's FCA claims, as the district court assumed was a possibility.

IV

Gianato and Given ask us also to exercise pendent appellate jurisdiction over the district court's determination that, as state officials sued in their individual capacities for actions taken in the course of their official duties, they qualify as "persons" subject to FCA liability. Pendent appellate jurisdiction, however, is available "only (1) when an issue is inextricably intertwined with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is necessary to ensure meaningful review of an immediately appealable issue." *Adams v. Ferguson*, 884 F.3d 219, 224 (4th Cir. 2018) (cleaned up). Because the question of whether the state officials are "persons" under the FCA is neither inextricably intertwined with nor necessary to ensure meaningful review of their claim of qualified immunity, pendent appellate jurisdiction to consider the issue is unavailable.

12

*　　*　　*

For the foregoing reasons, we vacate the district court's ruling deferring for further factual development the immunity issue and remand with the instruction that the district court deny Gianato and Given's motion to dismiss on the basis of qualified immunity.

VACATED AND REMANDED