United States Court of Appeals,

Fifth Circuit.

No. 90–2666.

Charlesworth R. MARTIN, Plaintiff–Appellee,

v.

Theodore THOMAS, Milo K. Shepard, Robert L. Prater and L.L. Clarkson, Defendants–Appellants.

Sept. 30, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before WILLIAMS, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Dr. Martin challenged the propriety of his arrest and prosecution by bringing a section 1983 suit for excessive force and arrest without due process. He also brought a pendent state law claim for malicious prosecution. The jury found in favor of Dr. Martin. Appellants Thomas, Shepard, Prater, and Clarkson all appeal the jury finding of malicious prosecution, claiming improper jury instructions, insufficient evidence, lack of jurisdiction, and qualified immunity. Appellants Thomas and Shepard challenge the verdict of excessive force claiming improper jury instruction and qualified immunity. Appellant Thomas also challenges the verdict of an arrest without due process claiming the evidence supports a finding of probable cause. Prater and Clarkson correctly assert the malicious prosecution verdict against them is not supported by sufficient evidence, and we reverse that ruling. Appellants' other objections, however, are without merit, and we, therefore, affirm the verdicts.

I. FACTS

The outcome of this case rests largely upon credibility determinations by the jury. The facts presented by the plaintiff are in stark contrast to the facts presented by the defendants, and the only evidence is the parties' testimony as well as reports and letters submitted by the parties describing the events in question. Thus, the jury was required to determine who prevailed based on whom the jury believed.

The pertinent facts that are not in dispute are relatively few. On July 12, 1982, Dr. Martin, a professor at Texas Southern University ("TSU"), had not yet been paid for a course he had taught, and he was informed that the man to whom he needed to talk was in the gymnasium participating in preregistration. Accordingly, Martin proceeded to the gym. After entering the gym, he was subsequently arrested by TSU police officers.

It is also not in dispute that a substantial sum of money had been stolen during preregistration the previous year. Consequently, Sergeant Brooks, the officer in charge of police operations, had given the TSU police officers on duty specific instructions as to who could enter the gym and through what entrance visitors could enter.

The dispute, as to the facts, begins when Dr. Martin arrived at the gymnasium. Martin claims he went to the back door of the gymnasium and knocked. Officer Shepard invited him into the gym. Martin showed his I.D. to the officer, but the I.D. stated he was a staff member and not a faculty member. Martin told Officer Shepard that he would look and find someone who could identify him as a faculty member.[1] Officer Shepard turned away from Martin because there was another knock at the door. At that time, Martin proceeded into the gym to try and find someone who could identify him.

Dr. Martin then maintains that he heard Officer Shepard say "Just push this guy out of here," as Officer Thomas approached him. Martin showed Officer Thomas his I.D., but Officer Thomas ignored it as he grabbed Martin. Martin protested that Thomas "should not do that," and Thomas responded by twisting the professor's arms behind his back and throwing him down on the bleachers. The officers took Martin outside, placed handcuffs on him, and threw him on the hood of a police car.

---

[1]In reality, faculty members could not use this door either. The officers on duty were instructed that only staff working at the preregistration could use the back door; all other people were to use the front door. Officer Shepard, however, allowed Dr. Martin to enter through the back door. It was the officers' duty to inform Dr. Martin that he had to exit the back door and enter through the front door. There is dispute as to whether the officers so informed Dr. Martin.

Dean Prater, dean of the School of Technology where Dr. Martin taught, witnessed the events outside the gymnasium but did not come to Martin's aid. Martin was taken to jail where he spent seven hours. Martin claims that at no time did he physically threaten the officers or resist the arrest.

The police officers offer a different version of the events. Officer Shepard asserts that he allowed Dr. Martin into the gym but told him that he had to stand inside the doorway, adding that if he wanted to enter the gym he could use the front door. Martin protested that he was a faculty member and could go anywhere he wanted. He walked towards the center of the gym, and Officer Shepard told Officer Thomas to turn Martin around and send him out of the gym. Officer Thomas asked Martin to leave. Martin became verbally abusive. Again, the two officers asked him to leave, but he refused. Martin raised his hand as if to strike Officer Shepard. The officers tried to restrain Martin, and they all fell into the bleachers. The officers maintain that throughout these events, Martin was kicking and screaming and physically threatening the officers. The officers took Martin to the police car, and finally put him into the police car after much trouble because of Martin's kicking. They then took Dr. Martin to jail.

Dr. Martin was charged with resisting arrest. He claims he later had a meeting with L.L. Clarkson, the academic vice-president, and Theodore Andrews, the TSU counsel. He was told that charges against him would be dropped if he agreed to drop all his charges and absolve TSU from any penalties. He refused the offer. Dr. Martin thereafter was tried and acquitted of resisting arrest. In December 1982, Martin received a letter stating that TSU would not renew his contract.

Dr. Martin brought suit against numerous TSU employees, including Officers Thomas and Shepard, Dean Prater, and Mr. Clarkson. The defendants were sued in both their individual and official capacities. The jury apparently believed Dr. Martin's version of what happened based on its special verdicts in response to sixteen questions. The jury found that Officer Shepard had arrested Martin without due process of law and awarded Martin $5,000. They also found that both Thomas

and Shepard had used excessive force and awarded Martin $20,000 for humiliation and emotional distress. The jury finally found that Thomas, Shepard, Prater, and Clarkson had maliciously prosecuted Martin, and the jury awarded a total of $13,200 in compensatory damages and $7,001 in punitive damages for this injury. Appellants challenge these jury findings.

## II. DUE PROCESS

The jury found Dr. Martin's arrest by Officer Shepard was without due process of law in violation of 42 U.S.C. § 1983. There are two essential elements of a section 1983 action: (1) the conduct in question must be committed by a person acting under the color of state law; and (2) the conduct must deprive the plaintiff of a right secured by the Constitution or the laws of the United States. *Augustine v. Doe,* 740 F.2d 322, 324–25 (5th Cir.1984); *Thomas v. Sams,* 734 F.2d 185, 190–91 (5th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). The parties do not dispute that Shepard was acting under the color of state law at the time of the arrest, and the right to be free from illegal arrest is a right secured by the Constitution.

A police officer must make a determination of probable cause before he causes any significant pretrial restraint of liberty. *Duckett v. City of Cedar Park, Texas,* 950 F.2d 272, 278 (5th Cir.1992). In making a determination of probable cause, we do not require a police officer to be perfect, nor do we want him always to err on the side of caution out of the fear of being sued. *Hunter v. Bryant,* ––– U.S. ––––, ––––, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). We do, however, require a police officer to make a reasonable determination whether probable cause exists:

> Whether an arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

*Beck v. State of Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). *See also, United States v. Bustamante–Saenz,* 894 F.2d 114, 118 (5th Cir.1990); *United States v. Raborn,* 872 F.2d

589, 593 (5th Cir.1989). "Because one of the factors is the extent of the intrusion, it is plain that reasonableness depends on not only when a seizure is made, but also how it is carried out." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985).

Officer Shepard goes to great lengths arguing that the facts support a finding of probable cause to arrest. He maintains Martin's entry into the gym constituted criminal trespass,[2] and Martin's kicking, screaming, and making of threats constituted assault, disorderly conduct, and resisting arrest. Shepard's argument is flawed because he analyzes only his version of the facts. According to Martin's version of the facts, he did not trespass because he was given permission to enter the gym. Similarly, his actions did not constitute assault, disorderly conduct, and resisting arrest because he alleges that he never kicked or screamed or made threats to the officers.

Unlike this Court, the jury observed the various witnesses and made assessments as to the credibility of each. The jury is at liberty to accept or reject the testimony of any witness, and apparently, the jury trusted Martin's account instead of the defendants' accounts. "Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." *Gibraltar Savings v. LDBrinkman Corp.,* 860 F.2d 1275, 1297 (5th Cir.1988), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989).[3] Because Martin's version of the facts, accepted as

---

[2]"A person commits an offense if he enters or remains on property or in a building of another without effective consent and he:

      (1) had notice that the entry was forbidden; or

      (2) received notice to depart but failed to do so."

Tex.Penal Code Ann. § 30.05(a) (West 1989).

[3]*See also, Strauch v. Gates Rubber Co.,* 879 F.2d 1282, 1285 (5th Cir.1989), *cert. denied,* 493 U.S. 1045, 110 S.Ct. 841, 107 L.Ed.2d 836 (1990) ("An appellate Court is in no position to weigh conflicting evidence and inferences or to determine the credibility of witnesses; that function is within the province of the finder of fact"); *Glass v. Petro–Tex Chemical Corp.,* 757

true, is that he neither trespassed nor physically nor verbally threatened the officers, we affirm the jury's finding of an arrest without due process.[4]

## III. JURY INSTRUCTIONS

The defendants challenge the appropriateness of the instructions the district judge gave the jury. We grant broad discretion to the district judge in formulating the jury charge. On appeal, we review the charge as a who le and reverse only if the jury is misled as to the substantive law. *Bradshaw v. Freightliner Corp.,* 937 F.2d 197, 200 (5th Cir.1991). "No harmful error is committed if the charge viewed as a whole correctly instructs the jury on the law, even though a portion is technically imperfect. *Harrison v. Otis Elevator Co.,* 935 F.2d 714, 717 (5th Cir.1991).

## A. EXCESSIVE FORCE

The jury found that Officers Thomas and Shepard used excessive force in their arrest of Dr. Martin. The officers challenge the propriety of this finding, claiming the jury finding was based on an impro per jury instruction. The district judge gave the following instruction in regard to the excessive force claim:

> [I]n making a lawful arrest an officer has the right to use such force as is necessary under the circumstances to effect the arrest. Whether or not the force used in making an arrest was

---

F.2d 1554, 1559 (5th Cir.1985) ("[A]n appellate court is not free to reweigh the evidence or to re-evaluate credibility of witnesses or to substitute for the district court's reasonable factual inferences from the evidence other inferences that the reviewing court may regard as more reasonable").

[4]Officer Shepard further claims the finding of arrest without due process should be reversed because Dr. Martin was awarded damages only for injury to his reputation which Officer Shepard claims is a basis for damages forbidden by *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The *Davis* Court was confronted with a defamation case in which the Louisville police department distributed a flyer which contained Mr. Davis' name and picture and stated he was a shoplifter. The Court held that injury to reputation alone is not enough to establish a claim under § 1983. The present case is substantially different because Dr. Martin is suing because his liberty interest to be free from an illegal arrest was violated. As damages for this violation, the jury granted monetary relief due to injury to reputation. Officer Shepard's contention confuses the issue of damages with the issue of liability for loss of a protected liberty. The finding of liability was not predicated on a reputational interest.

excessive is an issue to be determined in the light of all the surrounding circumstances, on the basis of that degree of force a reasonable and prudent officer would have applied in effecting the arrest under the circumstances disclosed in the case. To find that excessive force was used in the arrest of Dr. Martin, you must find a significant injury was caused Dr. Martin directly and only from the use of force which was excessive and that the excessiveness of the force was unreasonable.... For the purpose of deciding the reasonableness of the use of force, you must not consider the state of mind or motives of the officer. An officer's evil intentions will not make unlawful an objectively reasonable use of force, nor will an officer's good intentions make an unreasonable use of force constitutional.

The officers assert the instruction is improper based on the standard established in *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir.Unit A 1981).

In *Shillingford,* this Court articulated the following criteria for excessive force claims:

If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983.

*Id.* at 265. Caselaw contemporary to the *Shillingford* decision reiterated the standard.[5]

The conduct in question—i.e., the arrest of Dr. Martin—occurred while the *Shillingford* standard remained unchanged. By the time the case came to trial, however, the Supreme Court had established a new standard based upon the test of reasonableness under the Fourth Amendment. The Court said:

[T]he "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.... The Fourth Amendment inquiry is one of "objective reasonableness" under the circumstances, and subjective concepts like "malice" and "sadism" have no proper place in that inquiry.

---

[5]*See, Roberts v. Marino,* 656 F.2d 1112, 1114 (5th Cir.Unit A 1981) (quoting *Shillingford*); *Mark v. Caldwell,* 754 F.2d 1260, 1261 (5th Cir.), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985) ("To merit redress under [section 1983], we held, the officer's conduct must have been such that it "caused severe injuries, was grossly disproportionate to the need for action under the circumstances, and was inspired by malice.' Other batteries are the business of state law"); *Hinshaw v. Doffer,* 785 F.2d 1260, 1267 (5th Cir.1986) ("[T]o prevail on a section 1983 excessive force claim, a plaintiff must prove three things: (1) severe injury, (2) grossly disproportionate action vis-a-vis the need, and (3) malice").

*Graham v. Connor,* 490 U.S. 386, 397–99, 109 S.Ct. 1865, 1872–73, 104 L.Ed.2d 443 (1989). In an en banc opinion immediately following the *Graham* decision, this Court stated, "A plaintiff can thus prevail on a Constitutional excessive force claim by proving each of these three elements: (1) a *significant* injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.... We overrule all previous decisions of this circuit to the contrary." *Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989) (en banc) (emphasis added). Thus, between the time the incident in question occurred and the case came to trial, the excessive force standard had been changed so that the injury had to be "significant" instead of "severe" and also malice was no longer an element.

The issue before this Court, therefore, is whether we apply the excessive force standard in use when the incident occurred or the one in use when the case came to trial. The defendants maintain that we are bound by *Pfannstiel v. City of Marion,* 918 F.2d 1178 (5th Cir.1990). *Pfannstiel* involved a claim of excessive force arising from an incident in 1985, but the case went to trial after *Graham* established the new standard and after *Johnson* applied it. In *Pfannstiel,* we held that the *Shillingford* standard still applied. The Court, however, overlooked the fact that in *Johnson* also the incident had occurred before *Graham* while *Shillingford* was still in effect, but in *Johnson,* an en banc case, we applied the *Graham* standard.

We are bound by the earlier en banc opinion in *Johnson.* The *Johnson* decision explicitly relied upon the Supreme Court's decision in *Graham* even though the incident in *Johnson* also had occurred prior to the ruling in *Graham.* The en banc court, therefore, applied *Graham* retroactively.

Other courts have held similarly that *Graham* is to be applied retroactively. Some courts have expressly stated that they are doing so, *see, Austin v. Hamilton,* 945 F.2d 1155, 1161 n. 4 (10th Cir.1991); *Reed v. Hoy,* 909 F.2d 324, 327–28 (9th Cir.1989), *cert. denied,* ––– U.S. ––––, 111 S.Ct. 2887, 115 L.Ed.2d 1053 (1991). Other courts have applied it retroactively without explanation,

*see, Miller v. Lovett,* 879 F.2d 1066, 1070 (2d Cir.1989); *Thomas v. Frederick,* 766 F.Supp. 540, 553 (W.D.La.1991); *Braud v. Painter,* 730 F.Supp. 1, 7 (M.D.La.1990).

The instruction by the district court to the jury on excessive force was in accord with the Supreme Court's holding in *Graham.* This Court applied *Graham* retroactively in the controlling en banc decision in *Johnson.* We find no error in the excessive force jury instruction.

## B. MALICIOUS PROSECUTION

The jury found that Thomas, Shepard, Prater, and Clarkson had maliciously prosecuted Dr. Martin in violation of Texas state law. The defendants claim the finding was precipitated by an improper jury instruction. The district judge gave the following instruction:

> In order to prevail on this claim of malicious prosecution, Dr. Martin must establish each of the following elements: One, that a defendant acted outside the course and scope of his lawful authority. Two, that a defendant initiated against him prosecution for the crime of resisting arrest. Three, that the prosecution ended in favor of Dr. Martin, and that there was no probable cause for the prosecution. And, five, that the defendant acted with malice.

Defendants allege the trial judge's instruction failed to include two elements of malicious prosecution—i.e., Martin was innocent of the charge of resisting arrest and he suffered damages. The only Fifth Circuit case that lists the elements of malicious prosecution under Texas law includes the elements the defendants claim are lacking from the instruction. *Brown v. United States,* 653 F.2d 196, 198–99 (5th Cir.Unit A 1981), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982): "[T]o recover for malicious prosecution in Texas, the plaintiff must prove seven elements: (1) a criminal action was commenced against him; (2) the prosecution was caused by the defendant or with his aid; (3) the action terminated in the plaintiff's favor; (4) the plaintiff was innocent; (5) the defendant acted without probable cause; (6) the defendant acted with malice; and (7) the criminal proceeding damaged the plaintiff".[6]

---

[6]We express doubts as to whether the plaintiff's innocence is actually a separate requirement of a malicious prosecution cause of action in Texas. We are bound by our earlier ruling in *Brown,* but the Texas courts, which are the final arbiter of Texas law, have not conclusively determined if

Although the district judge did leave out these last two requirements when he was listing the elements, an examination of the charge as a whole reveals that all the elements were included. Immediately, following his listing of the elements of malicious prosecution, the district judge defined the offense of resisting arrest, thereby indicating that the jury had to find Martin innocent of resisting arrest, the crime with which he was ultimately charged. Then, the judge concluded his instructions by stating, "If you find that any rights of the plaintiff Dr. Martin have been violated, you must consider whether he should recover damages; and if so, in what amount." This instruction demonstrated to the jury that damages were an element of malicious prosecution. The jury found Martin had been damaged through humiliation, emotional distress, injury to reputation, and cost of a criminal defense.

Thus, the jury charge, when viewed as a whole, contained all the necessary elements of a claim of malicious prosecution. Although a more lucid instruction could have been presented, we cannot find that the district judge erred in the instruction, considering the proper deference we pay the district judge in formulating the jury charge.

## IV. SUFFICIENCY OF THE EVIDENCE—MALICIOUS PROSECUTION

The defendants claim the malicious prosecution verdict should be reversed because there is insufficient evidence to support it. This court reviews for substantial evidence. *Emmons v. Southern*

---

innocence is a separate requirement. Many Texas cases include innocence as an element: *see, Perez v. Kirk & Carrigan,* 822 S.W.2d 261, 267 (Tex.App.—Corpus Christi 1991, no writ); *Euresti v. Valdez,* 769 S.W.2d 575, 578 (Tex.App.—Corpus Christi 1989, no writ); *Diamond Shamrock Corp. v. Ortiz,* 753 S.W.2d 238, 241 (Tex.App.—Corpus Christi 1988, writ denied); *Futerfas v. Park Towers,* 707 S.W.2d 149, 161 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Thomas v. Cisneros,* 596 S.W.2d 313, 316 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). There are also many cases which exclude the element: *see, Coniglio v. Snyder,* 756 S.W.2d 743, 744 (Tex.App.—Corpus Christi 1988, writ denied); *McHenry v. Tom Thumb Page Drug Stores,* 696 S.W.2d 664, 665 (Tex.App.—Dallas 1985, writ dism'd); *Fisher v. Beach,* 671 S.W.2d 63, 66 (Tex.App.—Dallas 1984, no writ); *Terk v. Deaton,* 555 S.W.2d 154, 155 (Tex.Civ.App.—El Paso 1977, no writ); *Ada Oil Co. v. Dillaberry,* 440 S.W.2d 902, 909–910 (Tex.Civ.App.—Houston *[14th Dist.]* 1969, writ dism'd). The Texas Supreme Court has apparently not ruled on the issue. We follow our precedent in *Brown,* but we acknowledge the conflict in the Texas caselaw.

*Pacific Transport. Co.,* 701 F.2d 1112, 1119 (5th Cir.1983). The determination of the elements of a malicious prosecution case is a question of fact, and such conclusions are reversible only if "the facts and inferences point so strongly and overwhelmingly in favor of one party that he Court believes that reasonable men could not arrive at a contrary verdict." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). *See also, Hand v. Gary,* 838 F.2d 1420, 1425 (5th Cir.1988).

First, notwithstanding the deference we pay the jury's decision, we reverse the malicious prosecution verdicts against Clarkson and Prater for insufficient evidence. Martin's evidence of malicious prosecution by Clarkson consists only of the following: (1) Clarkson was present at a meeting in which Martin was offered the opportunity to have the charges dropped against him in return for his promise to release TSU from any liability; and (2) Clarkson failed to take any action to prevent the prosecution after reading a report raising doubts about Martin's guilt. The limited evidence against Clarkson is not sufficient to support the malicious prosecution verdict. His presence and silence at a meeting does not logically imply he authorized the bringing of charges against Martin. There is no affirmative act by Clarkson that played any role in the actions taken against Martin.

While evidence of Clarkson's participation is extremely limited, evidence of Prater's affirmative participation in or assistance of the prosecution is virtually non-existent. Martin merely claimed Prater was present when the police arrested Martin, but Prater failed to identify him or assist him in any way. At most, Clarkson and Prater were shown as not taking action to help Martin. Malicious inaction is not a tort, absent a special relationship. *Miles v. Melrose,* 882 F.2d 976, 992 (5th Cir.1989); *Howell v. City Towing Associates, Inc.,* 717 S.W.2d 729, 733 (Tex.App.—San Antonio, 1986, writ ref'd n.r.e.). The testimony regarding Clarkson and Prater's non-feasance is legally insufficient to support a malicious prosecution verdict, and we accordingly reverse the jury's finding of liability for malicious prosecution as to Clarkson and Prater.

As to the police officers, Thomas and Shepard, the testimony shows they are the ones who took the affirmative action against Martin in the events in the school gymnasium. Thomas and Shepard defend by saying that they had probable cause for their actions, and lack of probable cause is a necessary element of a malicious prosecution action in Texas. *Seven Elves, Inc., v. Eskenazi,* 704 F.2d 241, 245 (5th Cir.1983). Defendants claim they could reasonably believe that Martin was guilty of either trespass, disorderly conduct, or resisting arrest. The facts as presented by Dr. Martin, however, do not support a finding of probable cause. Officer Shepard's permission to enter the gymnasium precluded a belief that Dr. Martin was trespassing, and his compliance with the officers' actions rebutted a claim of disorderly conduct or resisting arrest. The jury was permitted to believe Dr. Martin's version of what occurred at the gymnasium instead of the defendants' version.

Furthermore, the defendants claim Dr. Martin never proved malice on their part, which is a necessary element of malicious prosecution. Because it is difficult to prove a person's state of mind, malice can be inferred from circumstantial evidence. *See, Fisher v. Beach,* 671 S.W.2d 63, 67 (Tex.App.—Dallas 1984, no writ) ("Malice, defined as ill will, evil motive, or reckless disregard of the rights of others, may be established by direct or circumstantial evidence and may be inferred from want of probable cause"); *Diamond Shamrock Corp. v. Ortiz,* 753 S.W.2d 238, 241 (Tex.App.—Corpus Christi 1988, writ denied) ("Appellants generally have a duty to make a full and fair disclosure of all evidence to the police and a failure to make material exculpatory information known to the police could be evidence of a hostile motive ..."). Upon hearing the evidence and assessing the demeanor and credibility of the witnesses, the jury found the defendants acted with malice. The finding on the record is not clearly erroneous.

After reviewing the record, we find that the lack of sufficient evidence contention of defendants Thomas and Shepard is without merit. The jury was presented with conflicting evidence and it made a determination as to the defendants' actions. The jury plainly analyzed the elements of malicious prosecution because it found Shepard, Thomas, Prater, and Clarkson liable, but it

concluded the evidence was insufficient to support a finding of malicious prosecution as to two other school administrators, Jefferson and Hill. We hold that the jury's findings are supported by sufficient evidence except as to Prater and Clarkson.

## V. ELEVENTH AMENDMENT

As a final attack upon the malicious prosecution verdict, the defendants claim federal courts lack jurisdiction over the malicious prosecution action. Dr. Martin's malicious prosecution claim is a state law action, and the Eleventh Amendment prohibits suits in federal court by a citizen against his own state or against a state agency or department. "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). The constitutional prohibition applies with equal force to pendent claims as well. *Id.,* 465 U.S. at 120, 104 S.Ct. at 918; *Daigle v. Gulf State Utilities Co., Local Union No. 2286,* 794 F.2d 974, 980 (5th Cir.), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986) ("[P]endent jurisdiction may not override the Eleventh Amendment"). Defendants claim they are being sued in their official capacity, and, accordingly, federal courts lack jurisdiction.

The defendants misinterpret Dr. Martin's lawsuit. Dr. Martin is suing the defendants for malicious prosecution in their individual capacities as opposed to their official capacities. The Eleventh Amendment does not bar suits against officials in their individual capacities. *See, Crane v. State of Texas,* 759 F.2d 412, 428 n. 17 (5th Cir.), *amended in part,* 766 F.2d 193 (5th Cir.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985) ("The Eleventh Amendment is obviously no bar to actions for damages against officials sued in their individual capacities"); *American Civil Liberties Union of Mississippi, Inc. v. Finch,* 638 F.2d 1336, 1341–42 (5th Cir.Unit A 1981) ("It is well settled, for instance, that a public officer's conduct can be sufficiently "official" to constitute state action within the meaning of the fourteenth amendment without at the same time

being sufficiently "official" to trigger the bar of the eleventh amendment").  Thus, because defendants are sued in their individual capacities, the federal courts have jurisdiction.

## VI. QUALIFIED IMMUNITY

Finally, the defendants claim to have qualified immunity.  In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court established an objective test for determining qualified immunity.  The Court stated, "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.,* 457 U.S. at 818, 102 S.Ct. at 2738.  The Supreme Court further defined the doctrine in later opinions.  An official's act does not enjoy the protection of qualified immunity if "in the light of pre-existing law the unlawfulness [is] apparent."  *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Hunter v. Bryant,* —— U.S. at ——, 112 S.Ct. at 537 (1991) (citations omitted).

Early in the proceedings at hand, the district judge ruled the defendants did not have qualified immunity.[7]  The defendants now challenge that ruling with respect to the claims of excessive force and arrest without due process.  Whether the defendants had the protection of qualified immunity in the present case is moot because any claim of qualified immunity has been waived.

With respect to the legal issues implicated by a claim of qualified immunity, the defendants

---

[7]The district judge was proper in making the determination early in the proceedings.  *Hunter v. Bryant,* —— U.S. at ——, 112 S.Ct. at 537 ("Immunity ordinarily should be decided by the court long before trial"); *Anderson v. Creighton,* 483 U.S. at 646, n. 6, 107 S.Ct. at 3042, n. 6 ("[Q]ualified immunity questions should be resolved at the earliest possible stage of a litigation"). There are times when the jury must make findings related to qualified immunity.  *See, White v. Walker,* 950 F.2d 972, 976 (5th Cir.1991) ("[I]f there are triable issues of fact about whether an officer could reasonably believe that his conduct was legal, then a jury should evaluate the question").  The parties in the present case, however, agreed that qualified immunity was not a jury issue.

waived their claim at the time of a magistrate's report. A magistrate judge recommended denying defendants' motion for summary judgment which included their claim of qualified immunity. 28 U.S.C. § 636(b)(1) provides defendants 10 days to object to the magistrate's report. Martin's counsel reminded defendants' counsel of the effect of the magistrate's ruling. Nevertheless, the defendants did not object within the specified ten days. Thus, they waived a claim of assured qualified immunity as a matter of law, although factual issues remained since the summary judgment motion involved only the question of law.

The remaining factual questions implicated by the immunity defense were later waived. In discussing jury instructions with the district judge, Dr. Martin's attorney stated, "We've agreed qualified immunity is not a jury issue because we're not going to put that in." Moreover, when the defendants made their objections to the jury instructions, they made no objections to the lack of issues concerning qualified immunity going before the jury. They were well aware of the factual issues involved because they objected to the instructions on excessive force, but they did not ask that any qualified immunity issues go to the jury. We conclude that there was full waiver of qualified immunity.

## VII. CONCLUSION

We affirm the judgment based upon the findings of excessive force, arrest without due process, and the judgment based upon the finding of malicious prosecution as to Thomas and Shepard. We affirm the rejection of the Eleventh Amendment and qualified immunity claims. We reverse the judgment based upon the finding of malicious prosecution as to Prater and Clarkson.

Appellants' pending motion to supplement the record excerpts with portions of the transcript is denied as moot. It is perhaps particularly useful to point out that on the issue of qualified immunity the Court relied upon the entire trial transcript and record in reaching this decision.

AFFIRMED IN PART;  REVERSED AND RENDERED IN PART.


PENDING MOTION DENIED.