# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2022

Lyle W. Cayce
Clerk

No. 20-20607

Eva Kristine Stramaski,

*Plaintiff—Appellee*,

*versus*

Mark Lawley, Individually,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-156

Before Elrod, Southwick, and Costa, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

Eva Stramaski claims her employment was terminated in retaliation for complaining she was going to be paid late. She filed a complaint against a department head within the Texas A&M Engineering Station, Dr. Mark Lawley, in his individual capacity, alleging he violated the anti-retaliation provision of the Fair Labor Standards Act. Lawley moved to dismiss Stramaski's retaliation claim because the suit was barred by sovereign immunity, and in the alternative, that he was entitled to qualified immunity. The district court determined that neither immunity applied. We agree as to

sovereign immunity but VACATE and REMAND as to qualified immunity.

## FACTUAL AND PROCEDURAL BACKGROUND

Eva Stramaski was employed as an Academic Advisor by Texas A&M University through the Texas A&M Engineering Experiment Station ("TEES"). She had recently returned from leave due to a surgical procedure when, on January 30, 2019, a TEES employee informed Stramaski that she would not be paid on time unless she submitted a second doctor's note that would release her back to work. Stramaski requested the second note but also spoke with TEES's Associate Director of Human Resources, Nicole Pottberg, to ensure she would be paid on time. Pottberg told Stramaski that she would be timely paid.

The next day, Stramaski received an e-mail from a man named Huff (whom the record does not otherwise identify) informing her she would not be paid in full for five or six days, even though her pay was finalized. On February 1, Stramaski went to Huff's office on an unrelated matter and again addressed her payment schedule. She confirmed with him that she would not be paid for five or six days from then. Huff also confirmed this timeline with the Assistant Dean for Finance. After this confirmation, Stramaski informed Huff that "she needed to be paid on time, as it was her legal right."

Stramaski then went directly to Human Resources to speak with someone about her potentially late pay. She spoke with an employee who ensured her that her "check would be cut within a few hours, and that she would be paid on time." Stramaski was timely paid.

Soon after Stramaski received this check, Dr. Mark Lawley, head of the Department of Industrial and Systems Engineering within TEES, entered Stramaski's office and told her she "was being aggressive with regard to being paid on time" and sent her home for the day. On February 13, Lawley

issued Stramaski a coaching letter detailing allegations against her from August to September 2018. Stramaski submitted a memo disputing those allegations on February 20. Two weeks later, on March 7, 2019, Lawley terminated Stramaski's employment.

In January 2020, Stramaski filed suit against Lawley in the United States District Court, Southern District of Texas. Lawley was sued only in his individual capacity for an alleged violation of the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 215(a)(3). Stramaski claimed she was wrongfully terminated in retaliation for complaining that she would not be timely paid for a particular pay period. She sought injunctive and declaratory relief as well as damages.

Lawley moved to dismiss Stramaski's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). He argued her suit was barred under the Eleventh Amendment and, in the alternative, that he was entitled to qualified immunity. The magistrate judge issued a report and recommendation on the motion. The district court adopted the magistrate judge's recommendation and granted Lawley's motion to dismiss the claims for injunctive and declaratory relief due to a lack of standing. The district court refused to dismiss the claims for damages, finding neither the Eleventh Amendment nor qualified immunity applied. Lawley timely appealed.

## DISCUSSION

Denials of sovereign immunity and qualified immunity are both reviewed *de novo*. *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 273 (5th Cir. 2020); *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). Absent waiver, the immunity of a state from suit as signified by, but not fully expressed in, the Eleventh Amendment is a jurisdictional barrier. *Corn*, 954 F.3d at 274, 276. We therefore start by considering the Eleventh Amendment. After concluding that there is jurisdiction, we evaluate the applicability of qualified immunity to Stramaski's FLSA claim.

*I.     Eleventh Amendment*

Lawley argues this suit is barred by the Eleventh Amendment because the state is the "real party in interest." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). He contends Stramaski's suit is only nominally against him in his individual capacity but in fact is against the state because all the relief Stramaski seeks will ultimately come from TEES, her state employer.

Generally, the Eleventh Amendment does not bar suits against governmental officials in their individual capacities, but "where the state is the real and substantial party in interest, the Eleventh Amendment may bar the suit." *Modica v. Taylor*, 465 F.3d 174, 183 (5th Cir. 2006). Whether the state is the real party in interest depends on the circumstances of the case. *Id.* We begin our analysis of the relevant circumstances by discussing one of our precedents involving a different but related statute — the Family and Medical Leave Act ("FMLA").

In *Modica*, we held that the definition of covered employers in the FMLA and the FLSA are "very similar." *Id.* at 186. We are one of several courts to hold that the term "employer" should be interpreted the same in both statutes. *Id.* at 186–87. Thus, because Congress "chose to make the definition of employer materially identical" in these two acts, the FMLA offers "the best guidance" to inform our analysis of the same terms in the FLSA. *See id.* at 196 (quotation marks and citation omitted).

Our *Modica* decision relied on the statutory definition of employer in the FMLA to conclude that the "plain language of the FMLA permits public employees to be held individually liable." *Id.* at 187. FMLA-covered employers include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). We explained that this language is straightforwardly read to allow public employees to be held individually liable

so long as they "act[], directly or indirectly, in the interest of an employer." *Modica*, 465 F.3d at 184–86. Our conclusion necessarily followed that the state-employed supervisor who allegedly retaliated against Modica could be liable in her individual capacity under the FMLA. *Id.* at 187.

> The FLSA's "employer" definition is nearly identical. It covers
>
> any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d). We thus interpret the FLSA as we have the FMLA. When a defendant employee was "acting directly or indirectly in the interest of an employer in relation to an employee," that defendant may be subject to liability in an individual capacity. *See Modica*, 465 F.3d at 186.

Before proceeding too far in addressing individual capacity suits under the FLSA, we need to inject some cautionary principles. The portion of the *Modica* opinion addressing FMLA liability dealt with a claim by an employee of a Texas state agency. *See id.* at 177–78. Among Modica's claims was one against agency Executive Director Humphrey for terminating her in alleged retaliation for seeking FMLA leave. *Id.* at 178. When considering defendant Humphrey's argument that the claim was actually against the state, we first cited one of our precedents in which we held that the FMLA claims in that suit brought by an employee of a Louisiana state agency were clearly against the state. *Id.* at 183 (citing *Kazmier v. Widmann*, 225 F.3d 519, 533 n.65 (5th Cir. 2000), *abrogated on other grounds by Nevada Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721 (2003)). The entire analysis of why the suit was actually against the state was in a footnote, where we cited a Supreme Court decision in which a suit "nominally against an officer" was held actually to be against the state. *Kazmier*, 225 F.3d at 533 n.65 (quoting *Pennhurst*, 465 U.S. at 101). The

*Modica* opinion did not distinguish *Kazmier* in any meaningful way, but we suggested two reasons not to apply it. *See Modica*, 465 F.3d at 183–87.

The first reason was that when deciding whether the Eleventh Amendment bars a suit because it is actually against a state, the circumstances of the case are determinative. *Id.* at 183. We discussed in a parenthetical the circumstances of another circuit's decision that led it to conclude that an FLSA suit, though brought against a state employee individually, was actually against the state. *Id.* (citing *Luder v. Endicott*, 253 F.3d 1020, 1024–25 (7th Cir. 2001)). We summarized the other circuit's holding this way:

> the state would be required to pay damages to the 145 plaintiffs and concluding that casting the suit, brought under the Fair Labor Standards Act, as one against the officers in their individual capacities was a "transparent[ ] effort at an end run around the Eleventh Amendment."

*Id.* (quoting *Luder*, 253 F.3d at 1024–25). The facts in *Luder* were nothing like those of *Modica*, which involved a single employee's claim against her supervisor. *See id.* at 177–78. Rather, it was the way the *Modica* opinion emphasized that the facts matter that is important. To be clear, *Kazmier* did not mention *Luder*, nor were the facts of *Kazmier* similar to *Luder*.

The second reason the *Modica* court used to avoid applying *Kazmier* is that it could be inconsistent with earlier, and thus controlling, Fifth Circuit precedents that the Eleventh Amendment does not bar suits against state officials in their individual capacities. *Id.* at 183 (citing *Hudson v. City of New Orleans*, 174 F.3d 677, 687 n.7 (5th Cir. 1999); *Martin v. Thomas*, 973 F.2d 449, 458 (5th Cir. 1992)). Yet, we read neither of the cited precedents as establishing an absolute rule relevant here.

The first case, *Hudson*, is neither an FLSA nor an FMLA case, as it was brought under Section 1983. *Hudson*, 174 F.3d at 679. *Hudson* is one of

our foundational decisions on the Eleventh Amendment, in which we restated — and for the first time enumerated — six factors for when suit against a governmental defendant was prohibited by the Eleventh Amendment. *Id.* (applying factors from *Clark v. Tarrant Cnty.*, 798 F.2d 736, 744–45 (5th Cir. 1986)). Relevant here is that *Hudson* made this observation: "The Eleventh Amendment does not come into play in personal capacity suits, . . . and the existence of an indemnification statute promising to pay judgments when an officer is sued in his individual capacity does not extend the Eleventh Amendment's protections around the officer." *Id.* at 687 n.7 (internal citations omitted). The *Hudson* court stated that indemnification is "only an agreement between the state and these individuals and cannot thereby be converted into an extension of Eleventh Amendment immunity by the state." *Id.* (quoting *Downing v. Williams*, 624 F.2d 612, 626 (5th Cir. 1980), *vacated on panel reh'g on other grounds*, 645 F.2d 1226 (5th Cir. 1981)). Indemnification, statutory or otherwise, is not involved in the case before us.

The second case the *Modica* court cited as raising doubts about *Kazmier* made a general statement that "[t]he Eleventh Amendment does not bar suits against officials in their individual capacities." *Martin*, 973 F.2d at 458. There was no consideration in *Martin* of the effect of a situation such as in *Luder*, in which any liability imposed on the named individual defendant would be shifted to the state itself. *See id.* What *Luder* held and *Kazmier* embraced is that cases brought against an individual state employee may actually be against the state. We see no unavoidable conflict between *Kazmier* and the older precedents of *Hudson* and *Martin*. Nonetheless, the facts of *Kazmier* are hardly *Luder*-ite — in *Kazmier*, a Louisiana governmental department fired a single employee for reasons that allegedly violated the FMLA. *Kazmier*, 225 F.3d at 522–23. Regardless, what is important in our analysis is that *Kazmier* properly held that the fact a plaintiff brings a suit against a state employee solely in that employee's individual

7

capacity does not eliminate the Eleventh Amendment as a possible defense. *Id.* at 523, 533 n.65. The facts matter.

Our conclusion that there is a place in our jurisprudence for holding that a suit nominally against an individual state employee is actually against the state was also the opinion of another panel of this court after *Modica. See Henley v. Simpson*, 527 F. App'x 303, 304, 308 (5th Cir. 2013). Though unpublished and not a precedent, the opinion's analysis is worthy of our review. Of some note, perhaps, the same judge who authored both *Modica* and *Hudson* was on the *Henley* panel, suggesting a fair potential for consistency in the three opinions. In *Henley*, five former Mississippi Highway Patrol officers whose duties included using and caring for police canines, initially brought suit under the FLSA against the state agency in charge of the Highway Patrol. *Id.* at 304. The commissioner of the state department overseeing the Highway Patrol and the director of the Highway Patrol were added to the suit in their individual and official capacities after the agency itself sought dismissal based on the Eleventh Amendment. *Id.*

The district court dismissed the state agency and the official capacity claim against the commissioner and the director because the claims were barred under the Eleventh Amendment. *Id.* The district court cited *Modica*'s holding that suits against state employees in their individual capacities are not barred by the Eleventh Amendment; the court also stated, though, that the *Luder* analysis was "somewhat appealing." *Henley v. Simpson*, No. 3:10-CV-590, 2012 WL 3017812, at *3 (S.D. Miss. July 23, 2012). What was "appealing" was that suits which were "transparently an effort at an end run around the Eleventh Amendment" by suing a state employee and not the state should also be dismissed. *Id.* (quoting *Luder*, 253 F.3d at 1025). The district court left it for this court to decide whether to add that consideration to our Eleventh Amendment caselaw. That is just what the panel did on appeal.

Our *Henley* panel identified the controlling issue as whether Mississippi was "the real party in interest." 527 F. App'x at 305. On the one hand, if the individual state employees will be personally liable for the judgment — even if indemnified by the state — then the Eleventh Amendment is inapplicable. *Id.* at 305–06. The panel then, as did *Kazmier*, discussed situations in which the individual was simply a nominal defendant and the "judgment sought would expend itself on the public treasury . . . or [] compel [the State] to act." *Id.* at 306 (alteration in original) (quoting *Pennhurst*, 465 U.S. at 101 n.11). In those situations, the Eleventh Amendment was a bar. *Id.*

The *Henley* panel then made a distinction that is key for us. The claim there concerned "the State's compensation policy and whether [the state employees'] caring for, and training, service canines resulted in an accrual of overtime hours." *Id.* at 307. The individual defendants "nether signed nor promulgated" the policy manual, but they were obligated to enforce it. *Id.* Thus, the individual defendants did not act wrongfully under state law. *Id.* at 307–08. At most, the policy promulgated by the state itself violated federal wage and hour laws. *Id.* A successful suit against the commissioner and the director, therefore, would evade the Eleventh Amendment for what was in fact a complaint about what the state had done. *Id.* at 305.

Quite differently, in the current case, Stramaski is claiming that the defendant retaliated specifically against her for complaints she was making about a possible delay in being paid. At least in the usual case, a claim of retaliation is not going to be a challenge to a state policy simply being implemented by a supervisor employee.

The *Henley* panel did go further than this distinction, though, by concluding that "payment of any wages owed Plaintiffs must ultimately come from the State treasury (indeed, Defendants may not have the ability to pay)." *Id.* at 307. That might be a categorical recasting of FLSA claims for

lost wages as claims against the state. At least in the context of a retaliation case on facts such as in the case before us, we conclude that the FLSA does provide a remedy against an individual employer for lost wages.

We also acknowledge that the Seventh Circuit *Luder* opinion does not mirror *Henley*. The *Luder* case did not clearly involve an official state policy that caused the possible FLSA violations. That court's factual account was that a prison warden forced defendant prison employees to work before and after their shifts without pay in order to perform such tasks as checking equipment and briefing the next shift of workers. *Luder*, 253 F.3d at 1022. There is no discussion in the opinion of whether that was official state policy, as in *Henley*. The 145 plaintiffs in *Luder* sought minimum wage for those hours, beginning three years before suit was filed. *Id.* at 1024. The court remarked on the likely impossibility that the warden and the three other defendants would be able to pay such a judgment, with the potential for bankruptcy. *Id.* The Seventh Circuit concluded that the effect of the suit was the same as a suit against the state, because the practical effect would be that the state would have to pay the judgment or else the state could not attract individuals to the supervisory positions such as being a warden at a prison. *Id.* In effect, the Seventh Circuit concluded that the real, substantial party in interest will be the state when the claims are too large for an individual to be able to pay. *Id.* at 1024.

The current suit does not present such a doomsday scenario for potential state individual "employers." This is a single-plaintiff, retaliation case in which the defendant is said to have terminated her for complaining about a delay in receiving her pay.

We return, now, to where we started with *Modica*'s uncertainty about the validity of *Kazmier* as an across-the-board holding that a suit against a state employee individually should be converted into one against the state. We conclude that *Kazmier* went beyond controlling precedent if that is what

it meant. At least in the retaliation context of this case, we will not recast the claims as being against the state as the real, substantial party in interest. We also interpret *Modica* and *Kazmier* as properly recognizing, though, that sometimes a suit against an individual state employee under the FLSA or FMLA will actually be against the state. The potential financial liability arising from the Seventh Circuit *Luder* facts was extreme, but we are not called on in this case to address individual liability arising on similar facts.

Holding public officials individually liable for retaliation under the FLSA also is consistent with our prior holdings regarding individual liability in other FLSA contexts. Some of those opinions did not make the distinctions we have here, but we need not sort through all such issues in order to resolve the present appeal. We have held, for example, that governmental employees can be sued in their individual capacity for FLSA violations generally, such as for failure to pay overtime wages. *Lee v. Coahoma Cnty.*, 937 F.2d 220, 226 (5th Cir. 1991). We explained that "individual[s] with managerial responsibilities" could be held jointly and severally liable for damages if the individual failed to comply with the FLSA because that kind of employee fit within the FLSA's definition of "employer." *Id.* In *Lee*, we recognized that a sheriff "clearly f[ell] within" that definition and therefore could be individually liable. *Id.*

Lawley, as a department head within TEES, is someone who at least at times acts "directly or indirectly in the interest of an employer" regarding employees. Further, the actions Stramaski identifies as retaliation are those Lawley committed. Stramaski does not challenge a TEES policy or other state-initiated action. Instead, she complains of the actions Lawley took specifically against her. The circumstances of the suit therefore show Lawley is the true party in interest. Accordingly, Stramaski's suit is not barred by sovereign immunity, and she can bring her retaliation claim against Lawley in his individual capacity.

*II.      Qualified Immunity*

The parties have assumed that the doctrine of qualified immunity applies to claims brought under the FLSA.  Starting from that premise, their differing arguments address the doctrine.  Our starting point is a conviction that substantial analysis is necessary before deciding if qualified immunity ever applies to the FLSA.  Nonetheless, because neither party has disputed the relevance of that doctrine, perhaps any contrary notion has been waived.

Whether waiver applies in this court due to the absence of argument by either party depends on the nature of the issue.  If the issue of whether a qualified immunity defense is implied by or otherwise exists under a federal statute is a question of statutory interpretation, then this court is required to discern statutory meaning regardless of party argument.  *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 227–28 (2015).  Further, regardless of the category in which to place the unasked question of whether the doctrine even applies, we may use our "independent power to identify and apply the proper construction of governing law" to any "issue or claim [that] is properly before the court, . . . not limited to the particular legal theories advanced by the parties."  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).  We conclude that regardless of whether the applicability of qualified immunity to the FLSA is a statutory-construction issue or whether it is simply too critical to ignore in this case, we will address it.  *See Texas Off. of Pub. Util. Couns. v. FCC*, 183 F.3d 393, 440 n.86 (5th Cir. 1999) (explaining the court's decision to analyze a constitutional issue not raised by any party on the appeal).

We discover no Fifth Circuit opinion that holds qualified immunity is a defense under the FLSA.  We also find very little discussion in opinions

from other circuits and none from the Supreme Court.[1] *See, e.g.*, *Lang v. Pa. Higher Educ. Assistance Agency*, 610 F. App'x 158, 160, 162–63 (3d Cir. 2015) (remanding for district court to reevaluate qualified immunity defense to FLSA claim). We have, though, determined that qualified immunity applies to FMLA claims. *See, e.g.*, *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770–71 (5th Cir. 2015) (applying qualified immunity to FMLA interference claim); *Rutland v. Pepper*, 404 F.3d 921, 924 (5th Cir. 2005) (holding the district court "should have granted [defendant] summary judgment based on qualified immunity" because plaintiff failed to allege FMLA violation); *see also Darby v. Bratch*, 287 F.3d 673, 681–82 & n.13 (8th Cir. 2002) (rejecting qualified immunity defense because FMLA creates clearly established rights but stating defendant did not raise argument regarding application of qualified immunity because of uncertainty in its application to public officials).

In light of the absence of any briefing on this foundational point, and because the analysis we set out indicates there are complexities involved for which briefing is needed prior to any decision, we will only identify some of the analysis that is necessary without reaching a conclusion. Because of our subsequent determination that qualified immunity would be available on these facts if it is available for this statute, we remand so the parties and the district court can make the initial resolution of whether the defense applies to the FLSA.

We set out the principles for the availability of qualified immunity under a statute. It is applicable to a congressional enactment when two

---

[1] The Supreme Court made clear more than two decades ago that sovereign immunity applied to claims brought against states under the FLSA. *See Alden v. Maine*, 527 U.S. 706, 712 (1999). No issue of qualified immunity as a defense by an individual defendant was involved in the case. It is *Alden* that makes a claimant's only option under the FLSA to sue another state employee in an individual capacity.

conditions exist: (1) "the tradition of immunity was so firmly rooted in the common law" and (2) is "supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine." *Wyatt v. Cole*, 504 U.S. 158, 163–64 (1992) (quotation marks and citation omitted) (holding that qualified immunity applies to claims under Section 1983)). The *Wyatt* Court held it necessary to analyze "whether there was an immunity at common law that Congress intended to incorporate" implicitly into the statute in question; in making the determination, "we look to the most closely analogous torts" in the common law compared to the conduct covered by the statute. *Id.* at 164.

Were there analogous torts in the common law? Did Congress "intend" to incorporate concepts of qualified immunity when it explicitly created a more limited defense of good faith in the FLSA? For example, a good faith following of administrative rulings on the meaning of the FLSA will bar an action for a violation of the Act. 29 U.S.C. § 259. Further, any employer who can show that the violation of the FLSA was committed "in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" will not be liable for liquidated damages in addition to actual damages. *Id.* § 260. We will not go further with setting out the difficulties, which may not be insurmountable, of applying qualified immunity to the FLSA. Certainly, though, there are difficulties. The initial resolution of the issue is for the district court.

When qualified immunity applies, it "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). A plaintiff can overcome the defense by showing (1) "that the official violated a statutory or constitutional right" and (2) that "the right was clearly established at the time of the challenged conduct." *Voss v. Goode*,

954 F.3d 234, 238 (5th Cir. 2020). A clearly established right is a right that is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alterations in original) (quotation marks and citation omitted). In assessing whether the defendant violated a clearly established right, we must ask "not only whether courts have recognized the *existence* of a particular constitutional right, but also . . . whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct." *Morgan*, 659 F.3d at 372 (alteration in original) (citation omitted).

We now examine the facts as to whether, if available under the FLSA, qualified immunity would apply. The district court accepted the magistrate judge's conclusion that Stramaski's claim is that she was terminated for insisting that she be timely paid. We have held that a violation of a much earlier version of the FLSA occurs when "an employer on any regular payment date fails to pay the full amount of the minimum wages and overtime compensation due an employee." *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1944). For purposes of our analysis in this case, we accept that as a fair reading of the obligation.

For Stramaski's retaliation claims, she must have plausibly alleged that her discharge was because she "filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). No complaint was filed in the sense of a formal, written statement. We have held that some informal complaints about FLSA violations may suffice, but they have to be more than "abstract grumblings or vague expressions of discontent." *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008) (quotation marks and citation omitted). Among other requirements, there must be assertions that the challenged conduct is or would be unlawful. *Id.* Here, Stramaski insisted that she has a "legal

right" to be paid on time. Thus, much of what is required by our caselaw is satisfied here.

There is a question, though, arising from the fact that Stramaski never complained about not being timely paid. In fact, she received her wages for the relevant time period on the proper date. Instead, her claim is that she suffered retaliation because she complained about being told that her *next* paycheck would be late. Whether her complaints made the difference or not, the prospect of late wages did not materialize. Thus, the issue under qualified immunity is whether discharging an employee when the employee insists that a violation of law not occur in the future, and the violation did not in fact occur, can constitute retaliation under the FLSA. It is that factual permutation that causes us to conclude that there is no clearly established law, with a sufficient degree of specificity, that Stramaski's termination was a violation of the FLSA.

We will mention the defendant's separate argument that the law also was not clearly established that an individual supervisory state employee like Lawley could be held personally liable under the FLSA. Even if that was uncertain, and we do not conclude it was, any uncertainty about the liability that would arise for violating someone's certain rights is not the proper focus. Whether a lawsuit can follow, *i.e.*, whether liability can be imposed, from someone's actions is an entirely separate question from whether it is clearly established that someone's actions were objectively reasonable at the time they occurred. In other words, the concern is whether, at the time that the relevant acts occurred, the future defendant's actions violated a clear right of a future plaintiff. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). We have been shown no caselaw that supports that the prospective defendant needs to know all the repercussions of a knowing violation of someone's right. It is enough that the right being violated is clear.

Based on this analysis, Stramaski's claim would be barred by qualified immunity because she does not allege that Lawley violated a clearly established law. However, the antecedent question is whether qualified immunity applies to the FLSA to begin with. We therefore remand for the district court to decide this question in the first instance. *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) ("[A] court of appeals sits as a court of review, not of first view.'" (citation omitted)).[2]

In summary, we affirm the rejection of sovereign immunity as a defense. We AFFIRM the denial of the defense of sovereign immunity. We VACATE the judgment denying the defense of qualified immunity and REMAND for further proceedings consistent with this opinion.

---

[2] If qualified immunity does not apply to the FLSA, and Lawley is found liable, Stramaski may recover lost wages and damages from him, but not relief that can be provided only by the state, like employee benefits and continued employment with TEES. A suit for lost benefits, even if brought against Lawley, would actually be a suit against the state, *see Modica*, 465 F.3d at 183, which we have held is barred here by sovereign immunity.

Gregg Costa, *Circuit Judge*, concurring:

It says something about how much qualified immunity dominates section 1983 litigation that everyone in the district court—the experienced lawyers and judges alike—assumed the immunity exists whenever a public official is sued. But qualified immunity is not some "brooding omnipresence in the sky" that automatically attaches in any suit. *See S. Pac. Co. v. Jensen*, 244 U.S. 205, 222 (1917) (Holmes, J., dissenting). Rather, it is a defense that must be found in the governing statute. *See Wyatt v. Cole*, 504 U.S. 158, 163 (1992). So whether the FLSA contains an immunity defense is a question of statutory interpretation.

And in a textualist world, recognizing an immunity defense when the words of the statute do not provide one is an extraordinary act of interpretation. Courts should read an immunity defense into a statute only "if the 'tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that 'Congress would have specifically so provided had it wished to abolish the doctrine.'" *Wyatt*, 504 U.S. at 163–64 (quoting *Owen v. City of Independence*, 445 U.S. 622, 637 (1980)).[1] Given this stringent inquiry, it is no surprise that qualified immunity is "typically invoked" in constitutional tort cases under section 1983 and *Bivens*, causes of action "largely 'devised by the Supreme Court without any legislative . . . guidance.'" *Berry v. Funk*, 146 F.3d 1003, 1013

---

[1] Justice Kennedy's concurring opinion in *Wyatt*, seemingly the controlling opinion as only four justices signed on to Justice O'Connor's opinion, casts doubt on the role of "policy reasons" in determining if an immunity defense exists. *See* 504 U.S. at 170–72 (Kennedy, concurring). It is not clear, however, that his opinion overrules the policy considerations relied on in earlier cases. *See id*. at 171 ("We need not decide whether or not it was appropriate for the Court in *Harlow* to depart from history in the name of public policy, reshaping immunity doctrines in light of those policy considerations."). What Justice Kennedy's opinion makes certain, however, is that common-law immunities for analogous claims must have existed when Congress enacted a statute because implicitly recognizing an immunity defense is "devising limitations to a remedial statute, enacted by the Congress, which 'on its face does not provide for *any* immunities." *Id*. (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)).

(D.C. Cir. 1998) (quoting *Crawford-El v. Britton*, 93 F.3d 813, 832 (D.C. Cir. 1996) (en banc) (Siberman, J., concurring)). After all, when Congress creates specific statutory defenses—which it did not do when enacting section 1983 in the Civil Rights Act of 1871—it likely does not intend to incorporate general common law defenses as well. *See id.*

While the Supreme Court has found a sufficient common law immunity to read in qualified immunity case a defense to constitutional torts, lower courts have found no similar tradition for rights created by some statutes. For example, we found no qualified immunity for retaliation suits under the False Claims Act. *See Samuel v. Holmes,* 138 F.3d 173, 178 (5th Cir. 1998) (Reavley, J.). Other courts have rejected immunity defenses under the antifraud provisions of the False Claims Act, *United States ex rel. Citynet, LLC v. Gianato*, 962 F.3d 154, 159–60 (4th Cir. 2020); *United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 678–86 (S.D. Tex. 2013), and under statutes as varied as the Wiretap Act, *see Berry*, 146 F.3d at 1013–14, the Civil Rights Act, *see Carl v. Angelone*, 883 F. Supp. 1433, 1436–37 (D. Nev. 1995); and the Stored Communications Act, *see Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 1006–09 (N.D. Cal. 2006).

That said, courts have found immunity defenses to some statutory claims. *See, e.g.*, *Tapley v. Collins*, 211 F.3d 1210, 1214–17 (11th Cir. 2000) (finding immunity defense under Wiretap Act); *Blake v. Wright*, 179 F.3d 1003, 1011–13 (6th Cir. 1999) (same); *Lue v. Moore*, 43 F.3d 1203, 1205 (8th Cir. 1994) (same for Rehabilitation Act); *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1299–1300 & n.31 (11th Cir. 1998) (same for Fair Housing Act). Those cases, however, wrongly assume that immunity is the default and exists unless Congress states otherwise. *See, e.g.*, *Tapley*, 211 F.3d at 1214 ("[T]he defense of qualified immunity is so well established, that if Congress wishes to abrogate it, Congress should specifically say so."). The same reasoning characterizes our decision recognizing an immunity defense under the Family and Medical Leave Act. *See Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770–71 (5th Cir. 2015)

But the Supreme Court's instruction on how to evaluate the availability of qualified immunity is different. To find an atextual immunity defense, the court must conduct a statute-specific analysis to determine if common-law immunity from suit was "firmly rooted" as a protection against a closely analogous tort. *Wyatt*, 504 U.S. at 164–65; *id.* at 171 (Kennedy, J., concurring). For this case, then, the proper inquiry is whether, when Congress enacted the Fair Labor Standards Act's antiretaliation provision, there was a tradition of immunity for a claim alleging intentional retaliation in the workplace.[2]

With these additional observations, I fully join the majority opinion and leave it to the district court to decide the existence of an immunity defense under the FLSA after full briefing from the parties.

---

[2] There are two potential dates to focus on. The original FLSA, enacted in 1938, only allowed the Secretary of Labor to bring retaliation claims. A 1977 Amendment to the law created a private cause of action for such claims. *See Pineda v. JTCH Apartments, L.L.C.*, 843 F.3d 1062, 1064 (5th Cir. 2016).